# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 16-20905-Civ-KING/TORRES

CENTER FOR INDIVIDUAL RIGHTS,

    Plaintiff,

v.

IRINA CHEVALDINA,

    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

This matter is before the Court on the Center for Individual Rights' ("Plaintiff") motion to compel against Irina Chevaldina ("Defendant" or "Chevaldina"). [D.E. 75]. Chevaldina responded to Plaintiff's motion on November 20, 2017 [D.E. 87] to which Plaintiff replied on November 21, 2017. [D.E. 89]. Therefore, Plaintiff's motion is ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

This is an action for breach of contract. The complaint – filed on March 11, 2016 [D.E. 1] – alleges that Plaintiff successfully represented Defendant *pro bono* in an appeal before the 11th Circuit in *Katz v. Google*, Appeal No. 14-14525, in which the Eleventh Circuit affirmed summary judgment in favor of Defendant in a copy

1

infringement action.[1] *See Katz v. Google, Inc.*, 802 F.3d 1178 (11th Cir. 2015), *aff'g*, *Katz v. Chevaldina*, 12-cv-22211, 2014 WL 5385690 (S.D. Fla. Sept. 5, 2014). Plaintiff alleges that Defendant had few financial obligations under the retainer agreement in that case and that Plaintiff paid the out of pocket expenses of the suit. Plaintiff contends that it only asked Defendant for (1) reasonable attorney fees and expenses as permitted under law, and (2) that Defendant provide Plaintiff with any fees or expenses that were attributable to Plaintiff's expenditures and/or the work of its attorneys. If Defendant decided to settle the case, Plaintiff alleges that Defendant was also obligated to provide Plaintiff with a reasonable amount in attorneys' fees and expenses.

In December 2015 – while being represented by another attorney – Defendant settled all the remaining claims in the *Katz* case. In the settlement, Plaintiff claims that Defendant obtained only $10,000 in attorney fees for the work of Plaintiff's attorneys as well as both taxable and non-taxable costs. Shortly thereafter, Plaintiff sought to challenge the fee award in the Eleventh Circuit, but Defendant allegedly instructed Plaintiff to withdraw its motion and Plaintiff reluctantly complied. Therefore, Plaintiff suggests that Defendant did not obtain a reasonable amount in attorney fees for the work of Plaintiff's attorneys and that Defendant breached the retainer agreement. In exchange for the low sum of $10,000 in attorney fees, Plaintiff alleges that Defendant agreed with Katz to drop a substantial claim against Defendant in excess of $100,000. Because Plaintiff

---

[1] Plaintiff is a public interest law firm organized under the laws of the District of Columbia.

alleges that it has been deprived of a reasonable attorney fee award, Plaintiff seeks judgment against Defendant in an amount of no less than $105,000 – including reasonable costs and expenses in accordance with 28 U.S.C. § 1920.

## II.    ANALYSIS

Plaintiff's motion seeks to compel Chevaldina to provide supplemental responses to Plaintiff's interrogatories 1 and 3, and require Chevaldina to pay reasonable expenses, including attorneys' fees, incurred in filing its motion. Plaintiff's motion relates to two paragraphs in Chevaldina's counterclaim concerning allegations that Plaintiff violated the Driver's Privacy Protection Act ("DPPA"). Specifically, paragraph 21 of the counterclaim alleges that "[a]s of the filing of this pleading, and in *spite of Defendant Counter-Plaintiff's notification*, [Plaintiff] had not taken any steps to abate, address, or rectify the violations laid forth herein and such violations continue day after day."  [D.E. 35] (emphasis added).[2]  Moreover, in paragraph 22 of Chevaldina's counterclaim, Chevaldina alleges that Plaintiff's "intentional unlawful inclusion" of her personal information "continues to present a serious risk of identity theft, as well as ongoing harm." [D.E. 35].  As a result of these allegations, the counterclaim alleges that Plaintiff is liable for actual and punitive damages.

Plaintiff's first interrogatory requests additional information concerning the allegation in paragraph 21 because Chevaldina purportedly notified Plaintiff of its

---

[2]    Plaintiff denies the allegations in its answer to Chevaldina's counterclaim.

violations of the DPPA prior to the date of Chevaldina filing her counterclaim. Interrogatory 1 states the following:

> With respect to the allegations in Paragraph 21 of the counterclaim, identify each communication in which you notified CIR of the alleged violation of the DPPA. For each such communication, (1) state whether it was oral or in writing or both, (2) set forth the date of the communication, (3) identify any document concerning the communication, and (4) identify all persons sending the communication and all persons receiving the communication.

In response to interrogatory 1, Chevaldina responded with the following paragraph:

> Defendant objects to the first interrogatories as unduly and unnecessarily burdensome to the extent that it seeks information that is matter public record, already in Plaintiff's possession, or otherwise readily available to Plaintiff, and, therefore, may be accessed and obtained by Plaintiffs with less burden than plaintiff can identify and provide requested information. CIR has in its possession and control all communications between CIR and Defendant. CIR is well aware of each facts, date, persons receiving communications between Plaintiff and Defendant. Defendant believes this Plaintiff's unreasonable request was made for improper purposes such as harassment, delay, unduly burdensome, and expensive. Without waiving these objections, Defendant states that CIR received communication from Defendant notifying of CIR's violation of DPPA on: December 23, 2016 (Defendant's Motion to Quash), Defendant's Reply in Opposition to CIR's Motion to Quash, March 2, 2017 Defendant's Objections to report and recommendation, Multiple meet and confer email communication between Defendant and CIR (CIR has all these emails in its possession and control).

Chevaldina relies on three filings in her response to interrogatory 1 – her motion to quash, her reply in opposition to Plaintiff's motion to quash, and her objections to the Court's Report and Recommendation – as well as unspecified email communications between the parties. Plaintiff argues that Chevaldina's response is inadequate because she only included boilerplate objections along with three documents on the docket that *never* mention the DPPA. As for Chevaldina's

4

contention that Plaintiff was notified in meet and confer emails, Plaintiff claims that it is unaware of any communications where Chevaldina mentioned the DPPA. As such, Plaintiff requests that Chevaldina be compelled to specify which communications she is relying upon for the allegation that Plaintiff was notified of its violations of the DPPA.[3]

Plaintiff's third interrogatory requests that Chevaldina "[d]escribe any other injury . . . incurred as a consequence of CIR's alleged violation of the DPPA." [D.E. 75]. Chevaldina responded to interrogatory 3 and argued that the term "other injury" was vague and that the question was outside the scope of her counterclaim:

> Defendant objects to these interrogatories to the extent that they are over-broad, unduly burdensome, vague, ambiguous, confusing, require speculation to determine their meaning or use imprecise specifications of the information sought. Plaintiff did not define the term "other injury", therefore, Defendant is not able to understand this question. Moreover, this question is out of scope of Defendant's counter-claim, therefore, is not related to DPPA claim.

[D.E. 75]. Plaintiff disputes that the interrogatory is vague and explains that Michael Rosman ("Mr. Rosman"), the General Counsel of the Center for Individual Rights, spoke with Chevaldina to discuss the information requested. Specifically, Mr. Rosman claims that he spoke with Chevaldina via telephone on September 15, 2017 and explained that the term "other injury" means any other harm for which Defendant is claiming damages in this case. As such, Plaintiff argues that

---

[3] Plaintiff contends that the information requested is relevant because Chevaldina alleges that Plaintiff willfully violated the DPPA and that punitive damages are warranted.

Chevaldina has no basis to contend that the information requested is vague and that a supplemental response to the interrogatory is required.

In response, Chevaldina argues that Plaintiff waited too long to file its motion to compel. On August 10, 2017 Plaintiff sent via email its first set of interrogatories and Chevaldina claims that she responded on September 13, 2017. The parties then spoke via telephone on September 15, 2017, but Plaintiff did not file its motion to compel until November 3, 2017. Because Plaintiff filed its motion to compel after thirty days from the date the discovery dispute arose, Chevaldina suggests that Plaintiff's motion did not comply with Local Rule 26.1(g)(1), which requires parties to promptly bring motions to compel thirty days after the occurrence.

Before addressing the merits of Plaintiff's motion, we will first consider Chevaldina's argument that Plaintiff's motion is untimely and should be summarily denied. Local Rule 26.1 provides the following:

> All motions related to discovery, including, but not limited to, motions to compel discovery and motions for protective order, *shall be filed within thirty (30) days of the occurrence of grounds for the motion*. Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought. Neither this thirty (30) day period nor any other Court-ordered scheduling deadlines may be extended by stipulation.

S.D. Fla. L.R. 26.1(g)(1) (emphasis added). Courts in the Eleventh Circuit have interpreted an "occurrence" broadly despite any definition for the term in the local rules. *See, e.g., Manno v. Healthcare Revenue Recovery Grp., LLC*, 2012 WL 1409532, at *2 (S.D. Fla. Apr. 23, 2012) ("Regardless of the specific triggering event,

6

the key point is that once a party seeking discovery learns that the opposing party objects to providing the requested discovery, the first party must seek relief from the court within thirty days or else be deemed to have waived such relief.").

To determine whether Plaintiff's motion is untimely, we must review the sequence of events that led to its filing. Plaintiff served Chevaldina with its first set of interrogatories on August 10, 2017 and Chevaldina requested an extension of time to respond until September 13, 2017. On September 15, 2017, Mr. Rosman spoke with Chevaldina on the telephone to speak about Chevaldina's discovery responses. During that conversation, Mr. Rosman claims that he told Chevaldina that – with respect to interrogatory 1 – Plaintiff was unaware of any communications or papers where Chevaldina notified Plaintiff that it was violating the DPPA. Mr. Rosman also claims that he clarified for Chevaldina that the terms "other injury" in interrogatory 3 means any harm – other than the identity theft covered by interrogatory 2 – for which Chevaldina is claiming damages. Chevaldina then purportedly asked that she be given additional time to consider Mr. Rosman's objections to her discovery responses.

Mr. Rosman contends that he followed up on his phone call with an email on September 25, 2017 asking whether Chevaldina would supplement her discovery responses. In a subsequent phone call, Chevaldina allegedly told Mr. Rosman that she would supplement her responses and asked if she could have until October 2,

7

2017 to which Mr. Rosman agreed.[4] On October 2, 2017, Mr. Rosman claims that he spoke with Chevaldina again and that she requested another week to respond to which Mr. Rosman again agreed. On October 10, 2017, Mr. Rosman explains that he spoke with Chevaldina via telephone and explained that Plaintiff had still not received a supplemental response to interrogatories 1 and 3 as promised. Chevaldina allegedly told Mr. Rosman that October 9, 2017 was Columbus Day and that she would respond by the end of day on October 10th. Because Chevaldina never served any supplemental responses on October 10th, Plaintiff filed its motion to compel on November 3, 2017. [D.E. 75].

After full consideration of the arguments presented, we are persuaded that Plaintiff's motion is timely. While Chevaldina claims that she never agreed to supplement any of her discovery responses in her discussions with Mr. Rosman, both parties, at the very least, agree that the parties spoke on September 15, 2017 to discuss Chevaldina's discovery objections. Moreover, throughout her opposition to Plaintiff's motion, Chevaldina never disputes that Plaintiff sent her an email on September 25, 2017 asking whether she would supplement her interrogatory responses and points to no communication to suggest that Mr. Rosman is lying.

Chevaldina also does not mention any of the later communications between the parties to rebut Plaintiff's argument that there were several agreed extensions of time to allow Chevaldina to supplement her discovery responses. As such, we have no reason to find that Mr. Rosman is lying and that the parties did not agree

---

[4] Chevaldina argues that Mr. Rosman is lying about their conversations and that she never agreed to supplement her responses to interrogatories 1 and 3.

to a supplemental discovery response on or before October 10, 2017. In any event, even if Plaintiff's motion was untimely, we find that Plaintiff has shown good cause for the Court to exercise its discretion to consider Plaintiff's motion on the merits. *See Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, 2010 WL 411088, at *2 (S.D. Fla. Jan. 29, 2010) ("Local Rule 26.1(H)(1) is permissive and affords the Court discretion in whether to consider a late-filed motion."); *Kabula v. S. Homes of Homestead VIII, Inc.*, 2008 WL 4691983, at *1 (S.D. Fla. Oct. 22, 2008) ("[B]ecause S.D. Fla. L.R. 26.1(H) is permissive, this Court has discretion to grant the Motion to Compel, even if it was filed late."); S.D. Fla. L.R. 26.1(h)(1) ("Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, *may* constitute a waiver of the relief sought .") (emphasis added). Therefore, Chevaldina's argument that Plaintiff's motion is untimely lacks merit.

As for Plaintiff's motion on the merits, we agree that Chevaldina's responses are inadequate. Chevaldina claims that – in response to interrogatory 1 – she notified Plaintiff of its violations of the DPPA in three filings and in several email communications. Yet, Plaintiff cannot find any references as to where Chevaldina ever mentioned the DPPA and the information requested is relevant as to whether punitive damages are warranted. *See* 18 U.S.C. § 2724 (explaining that under the DPPA, punitive damages are appropriate "upon proof of willful or reckless disregard of the law"); *see also Ela v. Destefano*, 869 F.3d 1198, 1201 (11th Cir. 2017). And although Plaintiff is allegedly in possession of all the parties' email

9

communications, we agree that Chevaldina's response is vague with respect to where the relevant information is actually located. *See Miccosukee Tribe of Indians of Florida v. Cypress*, 2013 WL 10740706, at *2 (S.D. Fla. June 28, 2013) ("Specificity is required in objections because without it both the requesting party and the Court lacks sufficient information to understand the scope of the objection, and to fairly consider whether the objection has merit.") (citation omitted). Accordingly, Plaintiff's motion is **GRANTED** in so far as Chevaldina is compelled to provide a supplemental response to interrogatory 1. Chevaldina should specify *all* instances where she notified Plaintiff of its violations of the DPPA with specific references to any relevant documents and/or communications (by page number).

In relation to interrogatory 3, we find that Chevaldina must supplement her response because there is no longer any ambiguity with respect to the terms "other injury" after she and Mr. Rosman conferred via telephone and email. Based on Chevaldina's opposition, it appears that the answer to the interrogatory may be none, but Chevaldina should make it clear in her supplemental response. Therefore, Plaintiff's motion to compel a supplemental response to interrogatory 3 is **GRANTED**.[5]

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion to compel is **GRANTED in part** and **DENIED in part**. [D.E. 75]. Chevaldina is compelled to amend her responses to Plaintiff's interrogatories 1

---

[5] As for Plaintiff's motion for attorneys' fees and expenses for filing its motion, Plaintiff's request is **DENIED**.

and 3 within fourteen (14) days from the date of this Order. To this extent, Plaintiff's Motion is **GRANTED**. As for Plaintiff's request for Chevaldina to pay reasonable expenses and attorneys' fees, Plaintiff's motion is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of November, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge