**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 16-20905-Civ-KING/TORRES

CENTER FOR INDIVIDUAL RIGHTS,

      Plaintiff,

v.

IRINA CHEVALDINA,

      Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO COMPEL

This matter is before the Court on Irina Chevaldina's ("Defendant" or "Chevaldina") motion to compel against the Center for Individual Rights ("Plaintiff"). [D.E. 73]. Plaintiff responded to Chevaldina's motion on November 10, 2017 [D.E. 80] to which Chevaldina replied on November 20, 2017. [D.E. 86]. Therefore, Chevaldina's motion is ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Chevaldina's motion is **DENIED**.

### I.  BACKGROUND

This is an action for breach of contract. The complaint – filed on March 11, 2016 [D.E. 1] – alleges that Plaintiff successfully represented Defendant *pro bono* in an appeal before the 11th Circuit in *Katz v. Google*, Appeal No. 14-14525, in which the Eleventh Circuit affirmed summary judgment in favor of Defendant in a copy

infringement action.[1] *See Katz v. Google, Inc.*, 802 F.3d 1178 (11th Cir. 2015), *aff'g*,

*Katz v. Chevaldina*, 12-cv-22211, 2014 WL 5385690 (S.D. Fla. Sept. 5, 2014).

Plaintiff alleges that Defendant had few financial obligations under the retainer

agreement in that case and that Plaintiff paid the out of pocket expenses of the suit.

Plaintiff contends that it only asked Defendant for (1) reasonable attorney fees and

expenses as permitted under law, and (2) that Defendant provide Plaintiff with any

fees or expenses that were attributable to Plaintiff's expenditures and/or the work of

its attorneys. If Defendant decided to settle the case, Plaintiff alleges that

Defendant was also obligated to provide Plaintiff with a reasonable amount in

attorney's fees and expenses.

In December 2015 – while being represented by another attorney –

Defendant settled all the remaining claims in the *Katz* case. In the settlement,

Plaintiff claims that Defendant obtained only $10,000 in attorney fees for the work

of Plaintiff's attorneys as well as both taxable and non-taxable costs. Shortly

thereafter, Plaintiff sought to challenge the fee award in the Eleventh Circuit, but

Defendant allegedly instructed Plaintiff to withdraw its motion and Plaintiff

reluctantly complied. Therefore, Plaintiff suggests that Defendant did not obtain a

reasonable amount in attorney fees for the work of Plaintiff's attorneys and that

Defendant breached the retainer agreement. In exchange for the low sum of

$10,000 in attorney fees, Plaintiff alleges that Defendant agreed with Katz to drop a

substantial claim against Defendant in excess of $100,000. Because Plaintiff

---

[1] Plaintiff is a public interest law firm organized under the laws of the District of Columbia.

alleges that it has been deprived of a reasonable attorney fee award, Plaintiff seeks judgment against Defendant in an amount of no less than $105,000 – including reasonable costs and expenses in accordance with 28 U.S.C. § 1920.

## II. ANALYSIS

Chevaldina's motion seeks to compel Plaintiff to produce documents in response to discovery request 4 and sanctions for mispresenting that no other documents exist. On August 10, 2017, Chevaldina emailed Plaintiff her first request for production of documents. In request 4, Chevaldina seeks "[a]ny and all records, ESI pertaining to the financial donations and financial contributions received by CIR between February 1, 2015 and the present date relating to the Agreement." [D.E. 73]. Plaintiff responded to Chevaldina's request with approximately four objections:

> Plaintiff objects to this request on the grounds of vagueness. As it is phrased, it is unclear whether 'ESI' is the only type of 'records' being sought by this request. Plaintiff also objects to Request No. 4 on the ground that the phrase 'relating to the Agreement' is vague in this context. The Agreement was a contractual arrangement for the provision of legal services, and contained various obligations on both parties to it. It is unclear how 'financial donations and financial contributions received by CIR' could 'relate' to the document creating those legal obligations.

> Plaintiff also objects on the ground that this request seeks documents that are not relevant to any claim or defense in this action. Plaintiff's records regarding 'financial donations and financial contributions' relating to the Agreement, if any existed, would have nothing to do with whether defendant breached the Agreement by failing to provide for a reasonable sum for attorneys' fees in the *Katz* appeal, as alleged in the complaint, what damages CIR may have incurred as a consequence of any breach, whether CIR violated the DPPA, or any damages that defendant may have incurred as a consequence.

Plaintiff further objects to the extent that the request calls for documents disclosing the names of CIR's donors, which is confidential information protected by the First Amendment right of association. Without waiving these objects, Plaintiff states that it has no additional responsive documents.

[D.E. 73].

On September 25, 2017, Chevaldina claims that – contrary to Plaintiff's response that it had no additional documents relating to request 4 – Plaintiff produced a communication with a donor in response to request 1. This document allegedly demonstrates that Plaintiff received money from various sources to cover all of the expenses in Chevaldina's case at the Eleventh Circuit, negating any claim that Plaintiff is entitled to attorneys' fees in this case. Chevaldina claims that she notified Plaintiff that its response to request 4 was a misrepresentation, but Plaintiff allegedly refused to produce any additional documents. As such, Chevaldina suggests that Plaintiff has intentionally withheld items in response to request 4, and that Plaintiff must be required to produce additional documents relating to the following areas of inquiry:

[B]ank statements, statements of accounts, bank records, deposit slips, accounting ledgers, statements, reports, billings, invoices, worksheets, balance sheets, wires, transmissions, cancelled checks, electronically stored information (ESI) and any other documents pertaining to the financial donations and financial contributions CIR received' as requested.

[D.E. 73]. Accordingly, Chevaldina concludes that Plaintiff has willfully concealed relevant evidence in this case and that Plaintiff's actions have interfered with the discovery process.

In sum, Chevaldina argues that Plaintiff has (1) deprived her of an opportunity to establish that Plaintiff has no damages in this case, (2) failed to comply with the Federal Rules, (3) intentionally served misleading discovery responses, and (4) failed to produce responsive documents as required. Because Plaintiff's conduct has been misleading, Chevaldina requests that Plaintiff produce all of the information requested above as well as any other documents pertaining to financial donations Plaintiff received. Chevaldina also requests that Plaintiff pay the costs of filing her motion and any other relief that the Court deems appropriate.

In response, Plaintiff requests (1) that the Court issue a protective order with respect to Plaintiff's financial documents and (2) that Chevaldina pay for Plaintiff's reasonable expenses incurred in opposing her motion. Plaintiff argues that Chevaldina's motion lacks merit primarily because it's based on the misconception that, if Plaintiff received money from one or more charitable contributors to fund its ongoing activities, then Plaintiff did not suffer any damages from Chevaldina's breach of contract. Plaintiff contends that this line of reasoning is wrong because contributions from donors and awards of attorneys' fees and expenses are two completely different sources of revenue. Plaintiff suggests that even if it had received a million dollars in contributions that were earmarked for the sole purpose of funding Chevaldina's case (which it allegedly did not), Plaintiff's damages for Chevaldina's breach of contract would not change. Therefore, Chevaldina's contention that Plaintiff received funds to cover the expenses of representing her is

allegedly irrelevant as well as her discovery requests for items relating to any

financial donations and contributions that Plaintiff received.[2]

Without rehashing all of the arguments presented, we agree with Plaintiff

that Chevaldina's motion lacks merit because request 4 has no relationship to the

claims presented in this case. Stated differently, it is not clear that any of the items

requested have any relevance to the allegations or defenses in this action. For

example, in request 4, Chevaldina seeks "[a]ny and all records, ESI pertaining to

the financial donations and financial contributions received by CIR between

February 1, 2015 and the present date relating to the Agreement." [D.E. 73].

Chevaldina appears to believe that documents showing donations to Plaintiff –

which is a public interest law firm – establishes that Plaintiff did not suffer any

damages as a result of a breach of contract and are therefore relevant to a defense

of this action. [D.E. 73] ("[D]isclosure of this information will prove [CIR's] case to

be frivolous, as CIR could not have any damages . . .."); *id.* ("CIR willfully deprived

Chevaldina of the ability to prove that CIR had no damages . . .").

Yet, Chevaldina cites no authority for her argument and we can find no case

where charitable donations have undermined a breach of contract claim. To be

clear, charitable contributions and attorney fee awards are completely different

---

[2]    Plaintiff argues that no document produced supports the theory that
Chevaldina's expenses would have been covered by a donor. Plaintiff also claims
that the document produced in response to request 1 is not a misrepresentation
because Plaintiff stated that it had no additional documents outside of the ones
produced in response to other discovery requests. Because the document
Chevaldina focuses on was produced in response to request 1, Plaintiff suggests that
Chevaldina's allegations of misconduct ring hollow.

sources of revenue for a public interest law firm.    If Chevaldina's position was correct, it would allow any party to willingly breach a contract with a public interest law firm – without any consequences – as long as the law firm receives other sources of revenue during its representation of a client.  That cannot be the law because it would lead to unforeseen consequences and allow charitable donations to eviscerate breach of contract claims.  Therefore, Chevaldina's request for documents in relation to financial donations is irrelevant because – even if Chevaldina establishes that Plaintiff received contributions specifically earmarked to cover the costs of her case (which Plaintiff suggests does not exist) – it would not change Chevaldina's contract with Plaintiff to pay a reasonable attorneys' fee at the conclusion of her case.[3]

Chevaldina's motion is also unpersuasive because Plaintiff has already stated that it has no additional documents in response to request 4 outside of the documents produced in response to Chevaldina's other discovery requests.  And we accept this averment at face value. *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 12 (D.D.C. 2007) (declining to compel production where party objected "on the basis that it believes no [responsive] document to exist [and] . . . [i]f a document is not in the possession, custody or control of a party, then it clearly

---

[3]    Other sources of revenue for a public interest law firm do not alleviate the damages that a firm suffers if a client breaches a retainer agreement.  While Chevaldina appears to believe that charitable donations adequately covered the costs of her case, she ignores the fact that she agreed to a contract to pay Plaintiff a reasonable attorneys' fee.  As such, if Plaintiff's allegations are true, it has still been damaged despite charitable donations because Chevaldina agreed to pay Plaintiff at the conclusion of a successful case.

cannot be turned over."); *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 152 (S.D.N.Y. 1997) ("Under ordinary circumstances, a . . . good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production . . . .") (citation omitted); 4 Wright & Miller, *Federal Practice & Procedure: Civ. 2d* § 2213 (2d ed. 1994) (noting that nothing more is required in responding to discovery request than response "saying that a particular document is not in existence or that it is not in the responding party's possession, custody, or control").  Therefore, Chevaldina's motion to compel is **DENIED** because the items requested are irrelevant and there is no evidence that Plaintiff is misrepresenting the documents that it has in its possession.[4]

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Chevaldina's motion to compel is **DENIED**.  [D.E. 73].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of November, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[4]     As for Plaintiff's motion for attorneys' fees and expenses, Plaintiff's motion is **DENIED**.