UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-20905-Civ-KING/TORRES

CENTER FOR INDIVIDUAL RIGHTS,

    Plaintiff,

v.

IRINA CHEVALDINA,

    Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION TO COMPEL

This matter is before the Court on the Center for Individual Rights' ("Plaintiff") motion to compel against non-party Gelber, Schacter, & Greenberg, P.A. ("GSG") to produce documents in response to a subpoena served on August 18, 2017. [D.E. 76]. GSG responded to Plaintiff's motion on November 6, 2017 [D.E. 78] and Irina Chevaldina ("Defendant" or "Chevaldina") responded on November 20, 2017. [D.E. 84]. Plaintiff timely replied to both responses on November 21, 2017. [D.E. 88]. Therefore, Plaintiff's motion is ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

### *I.  BACKGROUND*

This is an action for breach of contract. The complaint – filed on March 11, 2016 [D.E. 1] – alleges that Plaintiff successfully represented Defendant *pro bono* in an appeal before the 11th Circuit in *Katz v. Google*, Appeal No. 14-14525, in which

1

the Eleventh Circuit affirmed summary judgment in favor of Defendant in a copy infringement action.[1] *See Katz v. Google, Inc.*, 802 F.3d 1178 (11th Cir. 2015), *aff'g*, *Katz v. Chevaldina*, 12-cv-22211, 2014 WL 5385690 (S.D. Fla. Sept. 5, 2014). Plaintiff alleges that Chevaldina had few financial obligations under the retainer agreement in that case and that Plaintiff paid the out of pocket expenses of the suit. Plaintiff contends that it only asked Chevaldina for (1) reasonable attorney fees and expenses as permitted under law, and (2) that Chevaldina provide Plaintiff with any fees or expenses that were attributable to Plaintiff's expenditures and/or the work of its attorneys. If Chevaldina decided to settle the case, Plaintiff alleges that Chevaldina was also obligated to provide Plaintiff with a reasonable amount in attorney's fees and expenses.

In December 2015 – while being represented by another attorney – Defendant settled all the remaining claims in the *Katz* case. In the settlement, Plaintiff claims that Defendant obtained only $10,000 in attorney fees for the work of Plaintiff's attorneys as well as both taxable and non-taxable costs. Shortly thereafter, Plaintiff sought to challenge the fee award in the Eleventh Circuit, but Defendant allegedly instructed Plaintiff to withdraw its motion and Plaintiff reluctantly complied. Therefore, Plaintiff suggests that Defendant did not obtain a reasonable amount in attorneys' fees for the work of Plaintiff's attorneys and that Defendant breached the retainer agreement. In exchange for the low sum of $10,000 in attorney fees, Plaintiff alleges that Chevaldina agreed with Katz to drop

---

[1] Plaintiff is a public interest law firm organized under the laws of the District of Columbia.

2

a substantial claim against Chevaldina in excess of $100,000. Because Plaintiff alleges that it has been deprived of a reasonable attorney fee award, Plaintiff seeks judgment against Chevaldina in an amount of no less than $105,000 – including reasonable costs and expenses in accordance with 28 U.S.C. § 1920.

## II. ANALYSIS

Plaintiff's motion seeks to compel GSG to produce documents in response to a subpoena served on August 18, 2017. The purpose of the subpoena relates to a state court lawsuit in which Katz and other related entities sued Chevaldina in a case entitled *RK/FL Mgmt., Inc. v. Irina Chevaldina, et al*. Case No. 11-17842.[2] Plaintiff alleges that Chevaldina agreed to resolve her motion for fees in her federal appeal (in which Plaintiff was representing her) in exchange for Katz dropping a claim against Chevaldina in a state court case. Plaintiff believes that GSG negotiated that agreement with Chevaldina's complete knowledge and approval and that the requested documents establish that Chevaldina breached her retainer agreement.

The subpoena requested GSG to produce documents by no later than September 7, 2017. Specifically, the subpoena sought three categories of documents: (1) documents created on or after December 1, 2015 reflecting any communications with the plaintiffs in the state court litigation in relation to fees and costs, (2) documents created on or after December 1, 2015 reflecting any communications with the plaintiffs in the state court case concerning Chevaldina's motion for attorneys' fees in the federal appeal or any effort to resolve it, and (3)

---

[2] GSG concedes that it represented Chevaldina in the state court case.

3

documents created on or after December 1, 2015 reflecting any communications between GSG and CIR concerning either of the two litigations.

After receiving the subpoena, GSG conducted a search for relevant communications and responded with various objections on August 31, 2017. GSG and Plaintiff subsequently reached an agreement on the universe of relevant documents that would be subject to production. However, Chevaldina contacted GSG and directed her former law firm to not release any materials in response to the subpoena. On October 31, 2017, GSG informed Plaintiff that it would not produce any documents in accordance with Chevaldina's instructions. As such, GSG has produced no documents in response to the subpoena because it believes that it has a responsibility to safeguard the contents of any privileged materials on behalf of its former client.[3]

In response[4], Chevaldina argues that Plaintiff's motion should be denied because Plaintiff waited too long to file its motion to compel. Chevaldina contends that GSG responded to Plaintiff's subpoena on August 31, 2017 and that Plaintiff's motion – which was filed on November 3, 2017 – was filed after thirty days of the date the discovery dispute arose. Because Plaintiff's motion violates Local Rule

---

[3] GSG intends to comply with the Court's ruling on this matter – and if appropriate – to produce a privilege log for any documents withheld on the basis of the attorney-client privilege, the work product doctrine, or any other applicable privilege.

[4] GSG responded to Plaintiff's motion, but only contended that the rules of professional conduct compelled it to follow Chevaldina's instructions and therefore GSG requests guidance from the Court on its obligations in response to the subpoena. Other than those two arguments, GSG did not provide a substantive response in relation to Plaintiff's arguments.

26.1(g)(1), Chevaldina concludes that Plaintiff's motion should be summarily denied.

Chevaldina also argues that Plaintiff's motion should be denied because the first two categories of documents requested can allegedly be obtained on state court dockets. For example, Chevaldina contends that all motions, responses, oppositions, and orders are freely available to the public. As for the third category of documents requested, Chevaldina argues that Plaintiff is already in possession of the communications that Plaintiff had with GSG and therefore the subpoena was pursued for an improper purpose. And finally, Chevaldina suggests that Plaintiff has failed to demonstrate how the requested documents are relevant to this litigation.

The first issue presented is whether Plaintiff violated the Local Rules in filing its motion to compel thirty days after the date the discovery dispute arose. Local Rule 26.1 provides the following:

> All motions related to discovery, including, but not limited to, motions to compel discovery and motions for protective order, *shall be filed within thirty (30) days of the occurrence of grounds for the motion.* Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought. Neither this thirty (30) day period nor any other Court-ordered scheduling deadlines may be extended by stipulation.

S.D. Fla. L.R. 26.1(g)(1) (emphasis added). Courts in the Eleventh Circuit have interpreted an "occurrence" broadly despite any definition for the term in the local rules. *See, e.g., Manno v. Healthcare Revenue Recovery Grp., LLC*, 2012 WL 1409532, at *2 (S.D. Fla. Apr. 23, 2012) ("Regardless of the specific triggering event,

the key point is that once a party seeking discovery learns that the opposing party objects to providing the requested discovery, the first party must seek relief from the court within thirty days or else be deemed to have waived such relief.").

After reviewing the sequence of events preceding Plaintiff's motion, we find that the motion is timely in accordance with the Local Rules. In Michael Rosman's affidavit ("Mr. Rosman's), he explains that the subpoena was served on August 18, 2017 and GSG responded with objections on August 31, 2017. Subsequent to those objections, the parties conferred on whether any documents could be produced and it was not until October 13, 2017 that GSG informed Plaintiff that it would not produce any documents pursuant to Chevaldina's instructions. Because the parties reached an impasse on October 13, 2017 and Plaintiff filed its motion to compel on November 3, 2017, Plaintiff's motion is timely.

And even if Plaintiff's motion was untimely, its ongoing effort to resolve the dispute without motion practice constitutes good cause for the Court to consider Plaintiff's motion on the merits. *See Sandalwood Estates Homeowner's Ass'n, Inc. v. Empire Indem. Ins. Co.*, 2010 WL 411088, at *2 (S.D. Fla. Jan. 29, 2010) ("Local Rule 26.1(H)(1) is permissive and affords the Court discretion in whether to consider a late-filed motion."); *Kabula v. S. Homes of Homestead VIII, Inc.*, 2008 WL 4691983, at *1 (S.D. Fla. Oct. 22, 2008) ("[B]ecause S.D. Fla. L.R. 26.1(H) is permissive, this Court has discretion to grant the Motion to Compel, even if it was filed late."); S.D. Fla. L.R. 26.1(h)(1) ("Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, *may*

6

constitute a waiver of the relief sought .") (emphasis added). Therefore, Chevaldina's argument that Plaintiff's motion should be summarily denied lacks merit.

The next issue is GSG's objections to the subpoena. Under Rule 45, a party may serve a subpoena commanding a nonparty "to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." FED. R. CIV. P. 45(a)(1)(A)(iii). More specifically, Rule 45 allows a subpoena to command the "production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(2)(A); *see also* FED. R. CIV. P. 45(a)(1)(C) ("A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises . . . may be set out in a separate subpoena.").

If a non-party timely serves written objections, the non-party's objection to comply with the subpoena is suspended pending a court's order. *See Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 44 (N.D. Tex. 2015) ("Timely serving written objections therefore suspends the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order.") (citing FED. R. CIV. P. 45(d)(2)(B)(ii); *Hodnett v. Smurfit–Stone Container Enters., Inc.*, Civ. A, 2010 WL 3522497, at *1 n.3 (W.D. La. Sept. 2, 2010)). "The failure to serve written objections to a subpoena within the time

7

specified by Rule [45(d)(2)(B) ] typically constitutes a waiver of such objections, as does failing to file a timely motion to quash." *Am. Fed'n*, 313 F.R.D. at 43 (internal quotation marks omitted).

GSG asserted eleven general objections to the subpoena and "reserve[d] all specific objections as to the relevance, materiality, admissibility, and privileged status of any information and documents provided in response to the Subpoena. GSG also express reserve[d] all rights, claims, and defenses, and waives nothing." [D.E. 76-2]. Plaintiff argues that many of GSG's objections are repetitive, boilerplate, and non-specific, and therefore GSG has effectively waived its objections to the documents requested. *See Ford Motor Co. v. Versata Software, Inc.*, 2017 WL 914703, at *5 (N.D. Tex. Mar. 8, 2017) ("[A] non-party is subject to the requirements that an objection to a document request must, for each item or category, state with specificity the grounds for objecting to the request, including the reasons, and must state whether any responsive materials are being withheld on the basis of that objection; that an objection to part of a request must specify the part and permit inspection of the rest; that '"general or so-called boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)"') (quoting *Am. Fed'n*, 313 F.R.D. at 43); *see also Sabol v. Brooks*, 469 F. Supp. 2d 324, 328 (D. Md. 2006) (finding that a non-party "is subject to the same obligation sand scope of discovery under Rule 45 as if it were a party proceeding under Rule 34" and that a "failure to make particularized objections to document requests constitutes a waiver of those objections.") (citing *Marens v. Carrabba's Italian Grill,* 196 F.R.D. 35 (D. Md. 2000);

8

*Thompson v. HUD,* 199 F.R.D. 168 (D. Md. 2001); *Hall v. Sullivan,* 231 F.R.D. 468 (D. Md. 2005)).

In the Eleventh Circuit, objections should be "plain enough and specific enough so that the court can understand in what way the [discovery sought is] alleged to be objectionable." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (citation omitted). Courts in the Eleventh Circuit have also cautioned parties that boilerplate objections are borderline frivolous. *See Steed v. EverHome Mortgage Co.*, 308 F. App'x 364, 371 (11th Cir. 2009); *Guzman*, 249 F.R.D. 399, 400 (S.D. Fla. 2008) ("Parties shall not make nonspecific, boilerplate objections."). A similar principle governs objections on the basis of privilege. "Generalized objections asserting 'confidentiality,' attorney-client privilege or work product doctrine . . . do not comply with local rules." *Guzman*, 249 F.R.D. 399, 401 (S.D. Fla. 2008); *see also* FED. R. CIV. P. 34(b)(2)(B) ("[S]tate an objection to the request, including the reasons"); S.D. Fla. Local Rule 26.1(g)(3)(A) ("[O]bjections shall state with specificity all grounds"); S.D. Fla. Local Rule App. A §§ III(A)(5) ("[O]bjections should be specific, not generalized").

After a review of the eleven objections [D.E. 76-2], we agree with Plaintiff that nearly all of them are boilerplate and non-specific as to the reasons why compliance with the subpoena is inappropriate. The objections merely assert (1) that the time for compliance was unreasonable, (2) that the subpoena is unduly burdensome and overbroad, (3) that it imposes an undue burden, (4) that it seeks irrelevant evidence, (5) that it seeks confidential and/or attorney-client information,

9

(6) that it seeks documents in the possession of Plaintiff, and (7) that the requests are vague, not reasonably specific, and cumulative.

Courts in this district have frequently held that objections which fail to sufficiently specify the grounds on which they are based are improper and without merit. *See, e.g., Taylor v. Bradshaw,* 2014 WL 6459978 (S.D. Fla. Nov. 14, 2014); *Abdin v. Am. Sec. Ins. Co.*, 2010 WL 1257702 (S.D. Fla. March 29, 2010). By presenting boilerplate objections, GSG fails to provide the Court with any details on how the subpoena is improper or how it applies to the items requested. *See Miccosukee Tribe of Indians of Florida*, 2013 WL 10740706, at *2 (S.D. Fla. June 28, 2013) ("Specificity is required in objections because without it both the requesting party and the Court lacks sufficient information to understand the scope of the objection, and to fairly consider whether the objection has merit."); *Pepperwood of Naples Condo. Ass'n, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2011 WL 3841557, at *3 (M.D. Fla. Aug. 29, 2011) ("Defendant must state specific grounds for each objection."); *U.S.C.F.T.C. v. Am. Derivatives Corp.*, 2007 WL 1020838, at *3 (N.D. Ga. Mar. 30, 2007) ("Merely stating that a discovery request is vague or ambiguous, without specifically stating how it is so, is not a legitimate objection to discovery."). As such, GSG must supplement its response with specific objections where appropriate.

We also find that the documents requested are potentially relevant because Plaintiff's complaint alleges that Chevaldina required Plaintiff to withdraw its motion for fees in the federal appeal. Chevaldina allegedly acted in this way

10

because she wanted to receive a personal benefit with the state court plaintiffs who were suing her at the time in their motion for fees and costs. And GSG purportedly negotiated with the state court plaintiffs, on behalf of Chevaldina, to bargain away Plaintiff's motion for fees in the federal appeal. Therefore, there is a strong likelihood that the documents requested are relevant to the allegations presented.

As for Chevaldina's argument that the documents requested are available on state court dockets, that position is unavailing because the items Plaintiff seeks are *not* filed papers. Instead, Plaintiff seeks communications involving GSG and the state court plaintiffs, none of which would be ordinarily available on a public docket. Chevaldina's argument that Plaintiff is already in possession of many of the items requested is also misplaced because Plaintiff would not, for example, have communications from GSG to Chevaldina about Chevaldina's request to bargain away Plaintiff's motion for fees in the federal appeal.

The final issue to consider is whether the items requested violate any applicable privilege, such as the attorney-client privilege or the work product doctrine.[5] "The attorney-client privilege applies to confidential communications made in the rendition of legal services to the client." *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1380 (Fla. 1994) (citing Fla. Stat. § 90.502). The burden of establishing the privilege is on the proponent of the privilege, who must establish the existence of the privilege by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharms.,* 509 U.S. 579 (1993) (matters of preliminary questions,

---

[5] Neither Chevaldina nor GSG present a substantive argument, in their oppositions to Plaintiff's motion, that the items requested are protected by privilege.

11

identified in FED. R. EVID. 104(a), are to be established by a "preponderance of proof," *citing Bourjaily v. United States,* 483 U.S. 171, 175–76, (1987)). While not absolute, the privilege has long been understood to encourage clients to completely disclose information to their attorneys to allow for the rendition of competent legal advice and "thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). "Because application of the attorney-client privilege obstructs the truth-seeking process, it must be narrowly construed." *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013) (footnote omitted).

"The work product doctrine is distinct from and broader than the attorney-client privilege, and it protects materials prepared by the attorney, whether or not disclosed to the client, as well as materials prepared by agents for the attorney." *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 653 (S.D. Fla. 2009) (citing *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir. 1979)). Moreover, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena,* 220 F.3d 406, 409 (5th Cir. 2000). Yet, this still requires the party asserting protection under the work product doctrine to demonstrate that the drafting entity anticipated litigation at the time the documents were drafted. *See CSX Transp., Inc. v. Admiral Ins. Co.,* 1995 WL 855421, at *2 (M.D. Fla. July 20, 1995). This means that materials drafted in the ordinary course of business are not protected under the work product doctrine.

In determining whether materials are protected, a court must determine when and why a contested document was created. *See, e.g. In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998) ("The 'testing question' for the work-product privilege . . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"). And similar to the attorney-client privilege, "the burden is on the party withholding discovery to show that the documents should be afforded work-product [protection]." *Fojtasek,* 262 F.R.D. at 654 (citing *United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir. 1991) (applying rule for attorney-client issue); *Essex Builders Group, Inc. v. Amerisure Insurance Company,* 2006 WL 1733857 at *2 (M.D. Fla. June 20, 2006) ("[T]he party asserting work product privilege has the burden of showing the applicability of the doctrine") (citing *Grand Jury Proceedings v. United States,* 156 F.3d 1038, 1042 (10th Cir. 1998)).

Plaintiff argues that GSG's failure to produce a timely privilege log effectively waives any applicable privilege that might have applied to the requested documents. *See Micillo v. Liddle & Robinson LLP*, 2016 WL 2997507, at *3 (S.D.N.Y. May 23, 2016) ("[T]he Court concludes that [a non-party] failed to provide Plaintiff with a privilege log in a timely . . . manner. Accordingly, [the non-party] has waived any privilege with respect to the two responsive files.") (citing *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 166 (2d Cir. 1992); *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 167-68, n.7 (S.D.N.Y. 2014)

13

(collecting cases and noting that imposing waiver, rather than some lesser penalty, is the appropriate remedy when a party has failed to provide timely privilege logs); Wright & Miller, Federal Practice and Procedure § 2464 (3d ed.) ("Courts consistently have held that [a party receiving a discovery request who asserts a privilege] is required to produce a document index or privilege log, and that the failure to produce a log of sufficient detail constitutes a waiver of the underlying privilege or work product claim." (footnote omitted)); *Grossman v. Schwarz*, 125 F.R.D. 376, 386-87 (S.D.N.Y. 1989) (holding that failure to comply with privilege rules "will be considered presumptive evidence that the claim of privilege is without factual or legal foundation")).

Plaintiff also argues that Chevaldina waived any applicable privilege by (1) denying that there was a settlement of the federal appeal, (2) denying that she ever instructed Plaintiff to withdraw her motion for fees in the federal appeal, and (3) denying that she ever received a benefit from the state court plaintiffs withdrawing their motion for fees and costs in exchange for Chevaldina withdrawing her motion for fees in the federal appeal. Plaintiff contends that Chevaldina's denials place at issue GSG's communications with the state court plaintiffs and that all of the requested items must therefore be produced.

Beginning with the argument that Chevaldina waived all of her applicable privileges with respect to the requested documents by denying Plaintiff's allegations in her answer, Plaintiff's position is unconvincing. We can find no case or principle that supports the contention that merely denying allegations constitutes a waiver of

14

privilege. If Plaintiff's position was correct, it would eviscerate the attorney-client privilege or work product doctrine because, as soon as a defendant denied certain allegations, a waiver would occur and privileged documents could be discoverable. This cannot be the law as it would lead to unforeseen consequences and imperil one of the legal profession's longest protections between an attorney and client. Therefore, Plaintiff's argument lacks merit because "[t]o waive the attorney-client privilege . . . a defendant must do more than merely deny a plaintiff's allegations." *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987); *see also Contogouris v. Westpac Res.*, 2012 WL 13001036, at *1 (E.D. La. Apr. 11, 2012) ("Waiver of the attorney client privilege occurs only in those instances where a party has put a specific fact or argument at issue; not where, as here, the defendant had simply made general denials.") (citing *Lorenz*, 815 F.2d at 1098).

As for Plaintiff's argument that GSG should have produced a proper privilege log in its response to the subpoena, Plaintiff's position is well taken. The Local Rules provide, in pertinent part, that where a claim of privilege is asserted, the objecting party must prepare "a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection" except for "*written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action.*" S.D. Fla. L.R. 26.1(g)(3)(C) (emphasis added). Furthermore, "[w]here a claim of privilege is asserted in objecting to any . . . production demand . . . and an answer is not

15

provided on the basis of such assertion . . . [t]he attorney asserting the privilege shall . . . identify the nature of the privilege . . . being claimed." S.D. Fla. L.R. 26.1(g)(3)(B)(I). Rather than GSG explaining "the nature of the privileged documents" or "why the information sought is confidential or otherwise entitled to protection", GSG merely presents a series of boilerplate objections throughout its response. This "boilerplate, one size fits all variety has been rejected by this and other courts." *Mauro v. Alldredge*, 2013 WL 3866531, at *3 (M.D. Fla. July 25, 2013) (collecting cases); *see also Gonzalez v. ETourandTravel, Inc.*, 2014 WL 1250034, at *4 (M.D. Fla. Mar. 26, 2014).

However, we are not persuaded that GSG's failure to produce a timely privilege log constitutes a waiver given the circumstances presented. While Plaintiff is correct that a waiver of privilege *may* occur when a privilege log is not timely produced, courts have generally found a waiver to be a harsh sanction especially in the absence of any prejudice to the opposing party. *See Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010) ("[T]he Court agrees with Defendants that finding a waiver under the circumstances presented, where Defendant with the tacit approval of Plaintiffs, submitted an untimely privilege log, is an extreme sanction, too harsh under the circumstances.") (citing *Tyne v. Time Warner Entertainment Co., L.P.,* 212 F.R.D. 596, 597 (M.D. Fla. 2002) (declining to find waiver of privilege where Defendants served an incomplete privilege log eight months late and three days before the close of discovery); *Knights Armament Co. v. Optical Sys. Technology, Inc.,* 2009 WL 331608, *6–7 (M.D. Fla. Feb. 10, 2009)

(refusing to find assertions of privileges waived where defendant delayed six months before producing a privilege log, and then produced an incomplete log)).

GSG filed its objections to the subpoena on August 31, 2017 and supplemented its response on October 13, 2017. While approximately six weeks have now passed since GSG's latest response, we cannot find that the failure to produce a privilege log is so late and prejudicial that it waives all of the applicable privileges, if any, with respect to the documents requested. Because of the small amount of time that has passed, the lack of prejudice to Plaintiff, and the fact that a waiver of privilege *may* occur without a timely privilege log, we find that GSG's actions do not rise to the level of a waiver in this case. *See Henderson*, 2010 WL 11505169, at *1 ("The operative word in these cases, however, is '*may*.' Simply put, the Court finds Defendants' actions in this case do not rise to the level warranting the harsh sanction of waiver.").

To be clear, this does not excuse GSG from proffering a proper privilege log if the documents Plaintiff seeks are, in fact, being withheld on the basis of privilege. *See Benfatto v. Wachovia Bank, N.A.*, 2008 WL 4938418, at *2 (S.D. Fla. Nov. 19, 2008) (finding that defendants "may not claim that all of Plaintiff's discovery requests are privileged and non-discoverable without providing a privilege log in accordance with the Federal and Local Rules."); *see also Pepperwood*, 2011 WL 4382104, at *8 ("[Defendant] also notes that some of the information sought by [plaintiff] invades the attorney-client privilege. If this is the case, [defendant] is *obligated* to provide [plaintiff] with a privilege log setting forth this information.

17

The party invoking the privilege bears the burden of proof.") (emphasis in original). In doing so, GSG needs to specify which privilege is at issue for each request, if at all, and be *specific*. *See In re Pimenta*, 942 F. Supp. 2d 1282, 1290 (S.D. Fla. 2013) ("Blanket assertions of privilege before a district court are usually unacceptable."); *Maryland Cas. Co. v. Shreejee Ni Pedhi's, Inc.*, 2013 WL 3353319, at *4 (M.D. Fla. July 2, 2013) (finding that the objecting party "has the burden to demonstrate the work product doctrine applies and failed to make its work product objection with any specificity.").

A proper privilege log should contain the following information for each withheld document: "(1) the name and job title or capacity of the author of the document; (2) the name and job title or capacity of each recipient of the document; (3) the date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than the author(s); (4) the title and description of the document; (5) the subject matter addressed in the document; (6) the purpose(s) for which it was prepared or communicated; and (7) the specific basis for the claim that it is privileged." *Anderson v. Branch Banking & Tr. Co.*, 2015 WL 2339470, at *2 (citing *NIACCF, Inc. v. Cold Stone Creamery, Inc.,* 2014 WL 4545918, at *5 (S.D. Fla. Sept. 12, 2014)).

In sum, GSG must (1) adequately respond to Plaintiff's requests for production with *specific* objections where appropriate, (2) produce a proper privilege log detailing any documents withheld from production or otherwise represent that no responsive documents were in fact withheld, and otherwise (3) produce all

responsive non-privileged documents within GSG's possession, custody, or control. To this extent, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

### *III.  CONCLUSION*

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion to compel is **GRANTED in part and DENIED in part**. [D.E. 75]. To the extent that any documents are being withheld on the basis of any applicable privilege in response to Plaintiff's subpoena, GSG is ordered to produce a proper privilege log (detailing the specific privilege that applies) and supplement its response to the subpoena with specific objections within thirty (30) days from the date of this Order. To this extent, Plaintiff's motion is **GRANTED**. As for Plaintiff's motion to compel GSG to produce all communications requested in the subpoena, Plaintiff's motion is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of November, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge