**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 16-20905-Civ-KING/TORRES

CENTER FOR INDIVIDUAL RIGHTS,

      Plaintiff,

v.

IRINA CHEVALDINA,

      Defendant.

_____/

## OMNIBUS ORDER ON DISCOVERY MOTIONS

This matter is before the Court on several discovery motions that are ripe for disposition. [D.E. 142, 152, 154, 155, 159, 164, 166, 172, 178, 182, 183]. Having reviewed the motions, responses, replies, relevant authority, and record evidence submitted in support of or in opposition to the same, the Court's ruling on each motion follows.

## I.  BACKGROUND

This is an action for breach of contract. The complaint – filed on March 11, 2016 [D.E. 1] – alleges that the Center for Individual Rights ("Plaintiff" or "CIR") successfully represented Irina Chevaldina ("Defendant" or "Chevaldina") *pro bono* in an appeal before the 11th Circuit in *Katz v. Google*, Appeal No. 14-14525, in which the Eleventh Circuit affirmed summary judgment in favor of Defendant in a

1

copy infringement action.[1] *See Katz v. Google, Inc.*, 802 F.3d 1178 (11th Cir. 2015), *aff'g, Katz v. Chevaldina*, 12-cv-22211, 2014 WL 5385690 (S.D. Fla. Sept. 5, 2014). Plaintiff alleges that Chevaldina had few financial obligations under the retainer agreement in that case and that Plaintiff paid the out of pocket expenses of the suit. Plaintiff contends that it only asked Chevaldina for (1) reasonable attorney fees and expenses as permitted under law, and (2) that Chevaldina provide Plaintiff with any fees or expenses that were attributable to Plaintiff's expenditures and/or the work of its attorneys. If Chevaldina decided to settle the case, Plaintiff alleges that Chevaldina was also obligated to provide Plaintiff with a reasonable amount in attorney's fees and expenses.

In December 2015 – while being represented by another attorney – Defendant settled all the remaining claims in the *Katz* case. In the settlement, Plaintiff claims that Defendant obtained only $10,000 in attorney fees for the work of Plaintiff's attorneys as well as both taxable and non-taxable costs. Shortly thereafter, Plaintiff sought to challenge the fee award in the Eleventh Circuit, but Defendant allegedly instructed Plaintiff to withdraw its motion and Plaintiff reluctantly complied. Therefore, Plaintiff suggests that Defendant did not obtain a reasonable amount in attorneys' fees for the work of Plaintiff's attorneys and that Defendant breached the retainer agreement. In exchange for the low sum of $10,000 in attorney fees, Plaintiff alleges that Chevaldina agreed with Katz to drop a substantial claim against Chevaldina in excess of $100,000. Because Plaintiff

---

[1]    Plaintiff is a public interest law firm organized under the laws of the District of Columbia.

2

alleges that it has been deprived of a reasonable attorney fee award, Plaintiff seeks judgment against Chevaldina in an amount of no less than $105,000 – including reasonable costs and expenses in accordance with 28 U.S.C. § 1920.

## II.   APPLICABLE LEGAL PRINCIPLES AND LAW

Under the Federal Rules, a party may pose interrogatories related to any matter into which Rule 26(b) allows inquiry, FED. R. CIV. P. 33(a)(2), request the production of any documents that fall within the scope of Rule 26(b), FED. R. CIV. P. 34(a), and serve requests to admit certain matters within the scope of Rule 26(b)(1), FED. R. CIV. P. 36(a)(1). Rule 26(b) also allows discovery "through increased reliance on the commonsense concept of proportionality." *In re: Takata Airbag Prod. Liab. Litig.*, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) (quoting Chief Justice John Roberts, *2015 Year–End Report on the Federal Judiciary 6* (2015)). "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case." *Tiger v. Dynamic Sports Nutrition, LLC*, 2016 WL 1408098, at *2 (M.D. Fla. Apr. 11, 2016).  If the opposing party objects to interrogatories or requests, the requesting party may then file a motion to compel production pursuant to Fed. R. Civ. P. 37, but only after its counsel, in good faith, confers with opposing counsel to resolve discovery disputes without court intervention. *See* FED. R. CIV. P. 37(a)(1).

The Federal Rules afford the Court broad authority to control the scope of discovery, *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011), but "strongly favor full discovery whenever possible." *Farnsworth*

*v. Procter & Gamble Co.*, 758 F.3d 1545, 1547 (11th Cir. 1985). Courts must consequently employ a liberal and broad scope of discovery in keeping with the spirit and purpose of these rules. *See Rosenbaum v. Becker & Poliakoff, P.A.,* 708 F. Supp. 2d 1304, 1306 (S.D. Fla. 2010) (collecting cases). The "overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information, so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *State Nat'l Ins. Co. v. City of Destin*, 2015 WL 11109379, at *1 (N.D. Fla. Sept. 1, 2015).

However, while the scope of discovery is broad, it is not without limits. *See Washington v. Brown & Williamson Tobacco*, 959 F. 2d 1566, 1570 (11th Cir. 1992); *Rossbach v. Rundle,* 128 F. Supp. 2d 1348 (S.D. Fla. 2000) (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340 (1978)). To show that the requested discovery is otherwise objectionable, the onus is on the objecting party to demonstrate with specificity how the objected-to request is unreasonable or otherwise unduly burdensome. *See Rossbach*, 128 F. Supp. 3d at 1354 (citing in part *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985)).

Boilerplate objections and generalized responses are improper. *See Alhassid v. Bank of America*, 2015 WL 1120273, at *2 (S.D. Fla. March 12, 2015). This District has frequently held that objections which fail to sufficiently specify the grounds on which they are based are improper and without merit. *See, e.g., Taylor v. Bradshaw,* 2014 WL 6459978 (S.D. Fla. Nov. 14, 2014); *Abdin v. Am. Sec. Ins.*

*Co.*, 2010 WL 1257702 (S.D. Fla. March 29, 2010). More specifically, objections simply stating that a request is "overly broad, or unduly burdensome" are meaningless and without merit. *Abdin*, 2010 WL 1257702 at *1 (quoting *Guzman* v. *Irmadan, Inc.*, 249 F.R.D. 399, 400 (S.D. Fla. 2008)).

In addition to the Federal Rules, Southern District Local Rule 26.1 controls the necessary procedure a party must follow when objecting to a request for production or asserting a claim of privilege. It requires that:

> All motions related to discovery, including . . . motions to compel discovery . . . shall be filed within thirty (30) days of the occurrence of grounds for the motion. Failure to file a discovery motion within thirty (30) days, absent a showing of reasonable cause for a later filing, *may* constitute a waiver of the relief.

S.D. Fla. L.R. 26.1(i)(1) (emphasis added). On its face, Rule 26.1(i) is therefore plainly discretionary. While the "occurrence" of grounds for a motion tends to be the moment at which responses are filed, this is not always necessarily the case. *See, e.g.*, *Socas v. Northwestern Mut. Life Ins.*, 2008 WL 619322 (S.D. Fla. March 4, 2008) (finding that the "occurrence" triggering the motion to compel was when the requesting party examined certain documents months after their initial requests had been answered); *United States v. Polo Pointe Way, Delray Beach, Fl.*, 444 F. Supp. 2d 1258, 1261 (S.D. Fla. 2006) (finding that the "occurrence" at issue was a deposition that took place after responses were filed).

In pertinent part, the Local Rules also provide that where a claim of privilege is asserted, the objecting party must prepare "a privilege log with respect to all documents, electronically stored information, things and oral communications

withheld on the basis of a claim of privilege or work product protection" except for "*written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action.*" S.D. Fla. L.R. 26.1(g)(3)(C) (emphasis added). Furthermore, "[w]here a claim of privilege is asserted in objecting to any . . . production demand . . . and an answer is not provided on the basis of such assertion . . . [t]he attorney asserting the privilege shall . . . identify the nature of the privilege . . . being claimed." S.D. Fla. L.R. 26.1(g)(3)(B)(I).

## III.    ANALYSIS

### A.    *Plaintiff's Motion to Compel GSG to Produce Documents [D.E. 142]*

Plaintiff's first motion seeks to compel non-party Gelber, Schacter, & Greenberg, P.A. ("GSG") to produce documents in response to a subpoena served on August 18, 2017. [D.E. 142]. Plaintiff seeks (1) an Order requiring the production of certain documents without any restriction and/or confidentiality designation and (2) an Order requiring the production of all documents on GSG's privilege log. GSG responded to Plaintiff's motion on April 6, 2018 [D.E. 148] to which Plaintiff replied on April 13, 2018. [D.E. 153].[2]

Plaintiff's subpoena relates to a state court lawsuit in which Katz and other related entities sued Chevaldina in a case entitled *RK/FL Mgmt., Inc. v. Irina*

---

[2]    Chevaldina did not file a response to Plaintiff's motion, but filed a separate motion for protective order. [D.E. 152].

*Chevaldina, et al.* Case No. 11-17842.[3] Plaintiff alleges that Chevaldina agreed to resolve her motion for fees in her federal appeal (in which Plaintiff was representing her) in exchange for Katz dropping a claim against Chevaldina in a state court case. Plaintiff believes that GSG negotiated that agreement with Chevaldina's complete knowledge and approval and that the requested documents establish that Chevaldina breached her retainer agreement.

The subpoena requested GSG to produce documents by no later than September 7, 2017. Specifically, the subpoena sought three categories of documents: (1) documents created on or after December 1, 2015 reflecting any communications with the plaintiffs in the state court litigation in relation to fees and costs, (2) documents created on or after December 1, 2015 reflecting any communications with the plaintiffs in the state court case concerning Chevaldina's motion for attorneys' fees in the federal appeal or any effort to resolve it, and (3) documents created on or after December 1, 2015 reflecting any communications between GSG and CIR concerning either of the two litigations.

After receiving the subpoena, GSG conducted a search for relevant communications and responded with various objections on August 31, 2017. GSG and Plaintiff subsequently reached an agreement on the universe of relevant documents that would be subject to production. However, Chevaldina contacted GSG and directed her former law firm to not release any materials in response to the subpoena. On October 31, 2017, GSG informed Plaintiff that it would not

---

[3] GSG admits that it represented Chevaldina in the state court case.

produce any documents in accordance with Chevaldina's instructions. As such, GSG took the position that it should not produce any documents in response to the subpoena because it has a responsibility to safeguard the contents of privileged materials on behalf of its former client.

On November 29, 2017, we granted in part and denied in part Plaintiff's motion to compel. [D.E. 93]. We found that GSG's objections to the subpoena were non-specific and that GSG had to supplement its response with more precise objections. We also held that the GSG should have produced a timely privileged log, but that the failure to do so – given the minimal amount of time that had passed – did not constitute a waiver of privilege. Therefore, we concluded that GSG must (1) adequately respond to Plaintiff's requests for production with *specific* objections where appropriate, (2) produce a proper privilege log detailing any documents withheld from production or otherwise represent that no responsive documents were in fact withheld, and otherwise (3) produce all responsive non-privileged documents within GSG's possession, custody, or control.

GSG produced a privilege log on December 28, 2017. [D.E. 142-2]. That same day, GSG sent a letter to Plaintiff's attorneys stating that there were 74 documents potentially responsive to the subpoena and that GSG would claim that privilege applied to 56 of them.[4] All of these communications were allegedly between Chevaldina and her former lawyers (i.e. GSG, CIR, and Benjamin Kuehne) or contained some form of attorney work product. GSG and Plaintiff then entered

---

[4] GSG created these documents while representing Chevaldina in state court.

into a confidentiality agreement and GSG produced 18 communications pursuant to that agreement.

GSG's response advances two arguments in opposition to Plaintiff's renewed motion to compel. First, GSG contends that there is no basis for the Court to remove its confidentiality designations for 18 of the 74 documents because Plaintiff is fully able to use those documents pursuant to an agreed confidentiality agreement. In other words, GSG believes that there is no prejudice to Plaintiff if the confidentiality designations remain in place so long as Plaintiff takes certain minimal precautions in this case – i.e. filing the documents under seal. GSG also argues that the parties in the state court case continue to have an expectation of confidentiality surrounding these communications and that none of them have consented to the removal of the designation.

Second, GSG contends that the 56 documents on its privilege log should not be produced because they contain attorney-client communications, or attorney work product. GSG also suggests that Plaintiff is already in possession of 36 of the 56 privileged communications (because Plaintiff was Chevaldina's prior counsel) and that there are very few documents left to compel.[5] Because Plaintiff is in possession of nearly all of the documents sought and there is no basis to disturb the associated privilege, GSG concludes that Plaintiff's motion should be denied.

---

[5]     As for the remaining 20 documents in dispute, GSG argues that Chevaldina has produced two of them directly to Plaintiff. Therefore, GSG claims that Plaintiff possesses all but 18 of the privileged communications that it seeks. And, with respect to those 18 documents, GSG argues that there is no factual or legal basis to disregard the privilege.

"The attorney-client privilege applies to confidential communications made in the rendition of legal services to the client." *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1380 (Fla. 1994) (citing Fla. Stat. § 90.502). The burden of establishing the privilege is on the proponent of the privilege, who must establish the existence of the privilege by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharms.,* 509 U.S. 579 (1993) (matters of preliminary questions, identified in Fed. R. Evid. 104(a), are to be established by a "preponderance of proof," *citing Bourjaily v. United States,* 483 U.S. 171, 175–76, (1987)). While not absolute, the privilege has long been understood to encourage clients to completely disclose information to their attorneys to allow for the rendition of competent legal advice and "thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). "Because application of the attorney-client privilege obstructs the truth-seeking process, it must be narrowly construed." *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013) (footnote omitted).

"The work product doctrine is distinct from and broader than the attorney-client privilege, and it protects materials prepared by the attorney, whether or not disclosed to the client, as well as materials prepared by agents for the attorney." *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 653 (S.D. Fla. 2009) (citing *In re Grand Jury Proceedings,* 601 F.2d 162, 171 (5th Cir. 1979)). Moreover, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the

disclosure to a third party." *In re Grand Jury Subpoena,* 220 F.3d 406, 409 (5th Cir. 2000). Yet, this still requires the party asserting protection under the work product doctrine to demonstrate that the drafting entity anticipated litigation at the time the documents were drafted. *See CSX Transp., Inc. v. Admiral Ins. Co.,* 1995 WL 855421, at *2 (M.D. Fla. July 20, 1995). This means that materials drafted in the ordinary course of business are not protected under the work product doctrine.

In determining whether materials are protected, a court must determine when and why a contested document was created. *See, e.g. In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998) ("The 'testing question' for the work-product privilege . . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"). And similar to the attorney-client privilege, "the burden is on the party withholding discovery to show that the documents should be afforded work-product [protection]." *Fojtasek,* 262 F.R.D. at 654 (citing *United States v. Schaltenbrand,* 930 F.2d 1554, 1562 (11th Cir. 1991) (applying rule for attorney-client issue); *Essex Builders Group, Inc. v. Amerisure Insurance Company,* 2006 WL 1733857 at *2 (M.D. Fla. June 20, 2006) ("[T]he party asserting work product privilege has the burden of showing the applicability of the doctrine") (citing *Grand Jury Proceedings v. United States,* 156 F.3d 1038, 1042 (10th Cir. 1998)).

We begin with the question of whether the 56 documents on GSG's privilege log should be produced. GSG claims that the documents are privileged because they

constitute attorney-client communications or work product, and that Plaintiff is in possession of many of these documents already. On November 29, 2017, we found that GSG needed to serve a proper privilege log with the following information for each withheld document: "(1) the name and job title or capacity of the author of the document; (2) the name and job title or capacity of each recipient of the document; (3) the date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than the author(s); (4) the title and description of the document; (5) the subject matter addressed in the document; (6) the purpose(s) for which it was prepared or communicated; and (7) the specific basis for the claim that it is privileged." *Anderson v. Branch Banking & Tr. Co.*, 2015 WL 2339470, at *2 (citing *NIACCF, Inc. v. Cold Stone Creamery, Inc.,* 2014 WL 4545918, at *5 (S.D. Fla. Sept. 12, 2014)).

After reviewing GSG's revised privilege log, it does not include all of the required information. [D.E. 142-2]. First, it does not include the job title or capacity of the author/recipient of any document – making it more difficult for the Court to determine if a communication was sent to and from an attorney. Second, the privilege log is unclear on when a communication was prepared and if this date differs from the date it was sent or shared with another person. Third, there is no description of the documents. And fourth, there is no purpose that explains why the document was prepared.

Plaintiff claims that the documents should be produced because GSG has failed to meet its burden in showing that the items on its privilege log are

privileged. Plaintiff's argument is not without merit as GSG failed to follow the Court's directives in providing all the requested information on its privilege log. But, after an independent review of the senders, recipients, and subject matter of the documents in question, we are persuaded that the items on GSG's privilege log are in fact privileged. And although GSG could have crafted a better privilege log as we directed, that does not mean that the documents should be produced because GSG has done enough to meet its burden given the facts presented. Accordingly, Plaintiff's motion to compel the production of documents on GSG's privilege log is **DENIED**.

Next, Plaintiff argues that a party may waive the attorney-client privilege if he or she "injects into the case an issue that in fairness requires an examination of otherwise protected communications." *Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1419 (11th Cir. 1994). This argument is based on the predicate that "when a party's conduct reaches a certain point of disclosure, *fairness* requires that the privilege cease." *Id., citing Goldman, Sachs & Co. v. Blondis,* 412 F. Supp. 286, 288 (N.D. Ill. 1976) (emphasis in original); *see also United States v. Bilzerian,* 926 F.2d 1285 (2d Cir. 1991). Therefore, the law on waiver prevents a party from placing some privileged information into evidence for his or her own benefit, then arguing against disclosure of the remainder of privileged information, when the failure to disclose would prove manifestly unfair to the opposing party. *Cox,* 17 F.3d at 1418 (citing *Pitney–Bowes, Inc. v. Mestre,* 86 F.R.D. 444, 447 (S.D. Fla. 1980)).

As a general rule, a party does not waive a privilege by simply bringing or defending a lawsuit. *See Home Insurance Co. v. Advance Machine Co.,* 443 So. 2d 165, 168 (Fla. 1st DCA 1983) (finding that plaintiff, by bringing suit for contribution and injecting the requisite element of reasonableness of settlement as an issue does not waive the attorney-client privilege); *compare GAB Business Services, Inc. v. Syndicate 627,* 809 F.2d 755 (11th Cir. 1987) (holding that issue of reasonableness of settlement in indemnity cause of action is at the very heart of litigation, thus requires disclosure of attorney-client privileged information). Additionally, "a Court cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant." *Cox,* 17 F.3d at 1418 (quoting *Remington Arms Co. v. Liberty Mutual Ins. Co.,* 142 F.R.D. 408, 415 (D.Del. 1992)).

Instead, "the doctrine of waiver by issue injection . . . forbids one party from placing blame or intent on another, i.e., brandishing a sword, while at the same time allowing that party to hide behind the shield of attorney-client protection in justification of not having to divulge the very information that may prove harmful to its position." *Wachovia Fin. Servs., Inc. v. Birdman*, 2010 WL 11506044, at *3 (S.D. Fla. Sept. 27, 2010) (citing *GAB Business Services, Inc., v. Syndicate*, 809 F.2d 755, 762 (11th Cir. 1987) (noting that the attorney-client privilege "'was intended as

a shield, not a sword.'") (quoting *Pitney-Bowes, Inc., v. Mestre*, 86 F.R.D. 444, 446 (S.D. Fla. 1980)).[6]

This means that a party must affirmatively raise an issue involving privileged communications in order for a waiver to be effectuated. *See Bilzerian*, 926 F.2d at 1285. As an example, in *In re Barinco Corp. Securities Litigation,* 148 F.R.D. 91 (S.D.N.Y. 1993), the court addressed the waiver of privilege in the context of a securities fraud case in which plaintiffs sought discovery of a defendant's communications with counsel.[7] The plaintiffs in that case alleged that the defendant made a fraudulent representation in a portion of its public disclosure statement. The portion of the disclosure statement indicated that the representation made therein was based upon advice of counsel. The court found that – due to the statement's representation regarding a reliance on counsel – defendant would necessarily have to offer counsel's conclusions to prove its lack of scienter in making the statement. The *Barinco* court therefore found that

---

[6] *See also Laughner v. U.S.*, 373 F.2d 326, 327 (5th Cir. 1967) (noting that the "[attorney-client] privilege is not an inviolable seal upon the attorney's lips" and, in fact, must be overridden if the application of the privilege would serve to eliminate the one source of evidence likely to contradict the client's allegations); *Baratta v. Homeland Housewares, L.L.C.*, 242 F.R.D. 641 (S.D. Fla. 2007) (same).

[7] In *Bilzerian*, the Second Circuit reached a similar conclusion. The defendant in *Bilzerian* was charged with various securities law violations. The defendant filed a motion in limine, seeking to determine whether a waiver of privilege would result if he argued that he undertook various structurings of his financing arrangements in "good faith." *Bilzerian*, 926 F.2d at 1285. Because the lower court found that a waiver would occur, the defendant never made his good faith argument. The court therefore held that if the defendant had testified to his good faith, the jury would have been entitled to know the reasons why he though his actions were legal. This, in turn, would have placed privileged communications into issue and waived the privilege.

unfairness would result if the plaintiffs were denied access to the privileged information and the court held that the privilege had been waived.

Based on these legal principles, we cannot find that the 56 documents on GSG's privilege log should be produced – despite Chevaldina's arguments in this case – because she has not affirmatively raised a claim on the question of whether GSG entered into a settlement agreement or a negotiation in relation to the underlying fee motion. And as we stated in our prior Order on Plaintiff's motion to compel [D.E. 93], Chevaldina's mere denials of Plaintiff's allegations cannot waive either the attorney-client privilege or the work product doctrine. *See Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987) ("To waive the attorney-client privilege . . . a defendant must do more than merely deny a plaintiff's allegations."); *see also Contogouris v. Westpac Res.*, 2012 WL 13001036, at *1 (E.D. La. Apr. 11, 2012) ("Waiver of the attorney client privilege occurs only in those instances where a party has put a specific fact or argument at issue; not where, as here, the defendant had simply made general denials.") (citing *Lorenz*, 815 F.2d at 1098). Therefore, Plaintiff's motion to compel the documents on GSG's privilege log is **DENIED**.

The final issue is whether the documents that GSG produced to Plaintiff should retain their confidentiality designations. The agreement between GSG and Plaintiff states that Plaintiff may dispute the designation of any document marked as confidential. It also states that – if the parties cannot resolve a dispute – the issue may be presented to the Court. "The operations of the courts and the judicial

conduct of judges are matters of utmost public concern," *Landmark Commc'ns, Inc. v. Virginia,* 435 U.S. 829, 839 (1978), and "[t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). This right "includes the right to inspect and copy public records and documents." *Id.* (citation omitted). However, this right of access is not absolute because it ordinarily "does not apply to discovery and, where it does apply, may be overcome by a showing of good cause." *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007).

A finding of good cause requires "balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential." *Chicago Tribune,* 263 F.3d at 1309. "[W]hether good cause exists . . . is . . . decided by the nature and character of the information in question." *Id.* at 1315. "In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Romero*, 480 F.3d at 1246. Ultimately, the decision to allow public access is a matter of the Court's supervisory and discretionary power. *See Rushford v. New Yorker Magazine, Inc.,* 846 F.2d 249, 253

(4th Cir. 1988) (citing *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598–99 (1978)).

Here, GSG presents two arguments in opposition to Plaintiff's motion: (1) that the confidential designations impose a minimal burden, and (2) that the parties in the state court case expected the documents to remain confidential. GSG's arguments are well taken because Plaintiff has failed to show why it would be a burden to simply file the documents in question under seal. Moreover, the parties in the state court action have agreed that the documents should be kept as confidential and we will not imperil that agreement in this case. In other words, there is no need to change the designation of these documents when they are already considered confidential in a separate litigation and where there is no prejudice to Plaintiff in filing them under seal. Accordingly, Plaintiff's motion to compel the re-designation of confidential documents is **DENIED**.

## B.  *Chevaldina's Motion for Protective Order [D.E. 152]*

On April 9, 2018, Chevaldina filed a motion for protective order [D.E. 152] in opposition to Plaintiff's motion to compel GSG to produce documents because (1) the Court lacks subject matter jurisdiction over this case, and (2) all responsive documents have been either produced or listed on a privilege log for Plaintiff's review. Because jurisdiction is lacking and there is nothing left to produce, Chevaldina concludes that Plaintiff's motion to compel [D.E. 142] must be denied.

"Rule 26(c) allows the issuance of a protective order if 'good cause' is shown. Good cause "generally signifies a sound basis or legitimate need to take judicial

action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). The Eleventh Circuit has identified four factors to consider in determining the existence of good cause: "'[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order.'" *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1205 (11th Cir. 1985).

In addition to requiring good cause, this circuit has also required the district court to balance the interests of those requesting the order. *Farnsworth,* 758 F.2d at 1547 ("While Rule 26(c) articulates a single standard for ruling on a protective order motion, that of 'good cause,' the federal courts have superimposed a somewhat more demanding balancing of interests approach under the Rule.") (citations omitted). While a court has broad discretion to fashion a protective order, a "'court must articulate its reasons for granting a protective order sufficient for appellate review.'" *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989) (citations omitted); *see also Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005) ("Rule 26(c) provides that upon a showing of good cause, a court 'may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order.") (citations omitted).

Chevaldina claims that the lack of accounting and financial documents evidencing $75,000 means that this case must be dismissed because there is no subject matter jurisdiction. But, this argument lacks merit for the same reasons espoused in the Court's Report and Recommendation that was entered on April 19, 2018. [D.E. 158]. "Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states." *QBE Ins. Corp. v. Dolphin Line, Inc.,* 2009 WL 3248016, 4 (S.D. Ala. Oct. 06, 2009). In challenging a court's subject matter jurisdiction and whether a party has alleged in good faith its amount in controversy, it must generally "appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir. 2003) (quoting *St. Paul Mercury Indent. Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938)).[8]

Here, Chevaldina's motion presents a factual attack by challenging jurisdiction on the grounds that Plaintiff has failed to establish that the amount in controversy exceeds $75,000. But, Chevaldina's motion is *again* unpersuasive. First, the absence of a particular kind of evidence does not establish that the amount in controversy cannot be met. We cannot find a single case – and

---

[8] However, a different standard applies "where jurisdiction is based on a claim for indeterminate damages." *McKinnon Motors,* 329 F.3d at 807. In those cases, "the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Id.* (internal citations omitted).

Chevaldina failed to cite any – where the lack of accounting documents, by itself, met the standard of a legal certainty that a case was dismissed for failure to establish the amount in controversy requirement.

Second, Plaintiff has provided sufficient evidence in its initial disclosures that the amount in controversy exceeds $75,000. For example, Plaintiff's initial disclosures includes (1) Chevaldina's motion for fees in the Eleventh Circuit ($114,865 in fees and $93.95 in expenses)[9], (2) Chevaldina's bill of costs in the Eleventh Circuit ($133.99), (3) time records for Plaintiff's work on Chevaldina's motion for fees after October 13, 2015 ($14,672.50), and (4) Mr. Katz's letter reflecting a payment of $10,000. When considered as a whole, Plaintiff's initial disclosures provide a good faith basis that the amount in controversy for Chevaldina's alleged breach of contract equals at least $129,765.44.

As for Chevaldina's second argument – that all responsive documents have been either produced or listed on GSG's privilege log – Chevaldina's contention is well founded for the same reasons identified above. GSG provided a privilege log of all the communications that were withheld from production and has provided an applicable privilege. And while GSG could have prepared a better privilege log that complied with the Court's directives, GSG has done just enough to meet its burden that the documents requested are protected by either the attorney-client privilege or

---

[9] For instance, Plaintiff filed a motion for fees on October 15, 2015 in the amount of $114,485 and attached an extensive breakdown of its billing records in its representation of Chevaldina. [D.E. 149-2].

the work product doctrine. Therefore, Chevaldina's motion for a protective order is **GRANTED**.[10]

### C. *Plaintiff's Motion to Preclude Evidence [D.E. 154]*

On April 13, 2018, Plaintiff filed a renewed motion under Rule 37 (1) to preclude Chevaldina from submitting any evidence of harm suffered as a result of Plaintiff's allegation violation of the Driver's Privacy Protection Act ("DPPA"), (2) to preclude Chevaldina from submitting any evidence of damages that she incurred any of her claims or calling any witnesses not previously identified, (3) to order Chevaldina to pay Plaintiff's reasonable expenses, including attorneys' fees, and (4) to impose any other sanctions as authorized under Rule 37. [D.E. 154].

As background, Plaintiff previously filed a motion to preclude evidence against Chevaldina on January 3, 2018 because Chevaldina did not timely supplement her initial disclosures. [D.E. 101]. We denied Plaintiff's motion on the basis that it was premature. Chevaldina's first amended complaint was just filed on November 28, 2017 [D.E. 90] and Plaintiff's motion to preclude evidence was filed approximately four weeks later. Chevaldina admitted that she had not supplemented her initial disclosures, but it was not clear that she refused to do so. Instead, Chevaldina suggested that she had little time to supplement her initial disclosures because of the holiday season and the need to respond to Plaintiff's other related filings in this case. As such, Plaintiff's prior motion was denied because (1) there had not been a substantial delay in Chevaldina supplementing her initial

---

[10]    As for Plaintiff's request for fees and costs under Rule 37, Plaintiff's motion is **DENIED**.

disclosures, (2) Chevaldina appeared to be willing to comply with the Federal Rules, and (3) Chevaldina's explanation for failing to supplement was substantially justified.

Plaintiff renews its motion to preclude evidence because Chevaldina has still failed to supplement her initial disclosures with a calculation of damages for all of the claims in her first amended complaint or to provide any additional witnesses or documents. For example, Chevaldina has identified a plethora of economic, physical, and emotional maladies that she claims were caused by Plaintiff's violation of the DPPA. But, Plaintiff claims that Chevaldina has refused to identify any witnesses or documents to support her claims for damages or provide any computation of damages. Because Chevaldina has failed to supplement her initial disclosures, Plaintiff requests that Chevaldina be precluded from submitting (1) any evidence of actual damages on any of her claims, and (2) any documents or witnesses not previously identified.

Chevaldina argues in response that Plaintiff's motion should be denied for at least four reasons. First, Chevaldina claims that Plaintiff's motion is factually inaccurate because she supplemented her initial disclosures on May 8, 2018 with two witnesses – a Florida DMV and Lexis Nexus representative. Second, Chevaldina argues that she made some unspecified set of documents available for Plaintiff's inspection, but that Plaintiff failed to appear on the date and time coordinated between the parties. Third, Chevaldina suggests that Plaintiff's motion is silent on what harm it has suffered from the late supplemental disclosure and

that absent any prejudice, no sanctions are available under Rule 37. And fourth, Chevaldina contends that Plaintiff failed to meet and confer as required under the Local Rules and that the motion should be denied on that basis alone.

Supplemental disclosures are required under Rule 26. As part of a party's initial disclosures, a party must provide "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). A party must then supplement or correct the disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). If a party fails to timely supplement its disclosures, as required by Rule 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A court, "[i]n addition to or instead of this sanction," may order "payment of the reasonable expenses, including attorney's fees, caused by the failure," "may inform the jury of the party's failure," or "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1). The "party who is alleged to have failed to comply with Rule 26 bears the burden to show that its actions were substantially justified or harmless." *Parrish v. Freightliner, LLC*, 471 F. Supp. 2d 1262, 1268 (M.D. Fla. 2006). Courts consider "the non-disclosing party's explanation for its failure to disclose, the importance of the information, and

any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009).

Here, Plaintiff's motion is well taken because, even if we find that Chevaldina supplemented her initial disclosures on May 8, 2018 with the identity of two additional witnesses, she has not complied with all of her obligations under Rule 26. To be clear, Chevaldina claims that she has suffered a plethora of economic, physical, and emotional harm as a result of Plaintiff's actions. She also asserts that she has incurred security protection costs, emotional distress, anxiety, stress, difficulty sleeping, worry, grief, migraines, heart palpitations, blurry vision, legal expenses, and social harm.

But, to date, Plaintiff (by Chevaldina's own admission) is not in receipt of any document or evidentiary material on which Chevaldina's alleged harms are based. Indeed, Chevaldina's explanation for failing to supplement her initial disclosures is poor because, at most, Plaintiff has the identity of two witnesses with no computations of any of Chevaldina's alleged damages. And Chevaldina has failed to meet her "burden of establishing that a failure to disclose was substantially justified or harmless . . . ." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009). Moreover, Chevaldina's argument that Plaintiff has not suffered any prejudice lacks merit because Plaintiff is not in receipt of *any* computations underlying Chevaldina's damages, and months have now passed without any supplementation. In other words, by failing to disclose her computation of damages

in a timely manner and with a discovery deadline of May 30, 2018, Chevaldina has prejudiced Plaintiff's ability to obtain any additional discovery on her claims.

We therefore find, that pursuant to Rule 37, Chevaldina has failed to timely disclose her computations for actual damages as required under Rule 26, and that her failure is not substantially justified or harmless. Accordingly, Plaintiff's motion is **GRANTED** and Chevaldina is precluded from introducing any evidence of damages that she incurred on any of her claims or calling any witnesses not previously identified. *See In re Mirabilis Ventures, Inc.*, 2011 WL 3236027, at *5 (M.D. Fla. July 28, 2011) ("Where a party fails to properly identify a category of damages or to provide the calculations underlying it, it is within the court's discretion to exclude evidence relating to those damages.") (citing *Mee Industries v. Dow Chemical Co.*, 608 F.3d 1202, 1221–22 (11th Cir. 2010)). As for Plaintiff's request for Chevaldina to pay Plaintiff's reasonable attorneys' fees and expenses, that motion is **DENIED**.

### D. *Plaintiff's Motion to Compel Better Responses [D.E. 155]*

On April 13, 2018, Plaintiff filed a motion to compel against Chevaldina (1) to compel better responses to requests 1-2, 4-5, and 8-10 in Plaintiff's second set of requests for production of documents, and (2) to require payment of Plaintiff's reasonable expenses in filing its motion. [D.E. 155]. In requests 1, 2, 4, and 5, Plaintiff requested the following items:

1. All cancelled checks or other evidence of payment to the firm of Gelber, Schacter, and Greenberg, P.A. ("GSG") for its representation of you in the State Court Litigation.
2. All bills from GSG for its representation of you in the State Court Litigation.
4. All bills, cancelled checks, bank statements and other documents supporting your allegation that you "had to pay another attorney for the work CIR refused to perform *pro bono*" as alleged in paragraph 35 of your First Amended Counterclaim.
5. Any time records or other evidence of hours worked by "another attorney for the work CIR refused to perform *pro bono*" as alleged in paragraph 35 of the First Amended Counterclaim.

[D.E. 155].

Chevaldina served identical responses to the aforementioned requests:

Defendant objects to this document request to the extent that it is overbroad, unduly burdensome, vague, ambiguous, confusing, require[s] speculation to determine their meaning or use imprecise specifications of the information sought. Defendant objects to this document request to the extent that it seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Defendant believes this [sic] Plaintiff's request is made for improper purposes such as harassment, delay, unduly burdensome, and expensive.

Furthermore, Chevaldina states that GSG is her former attorney, and her relationship with GSG is protected by attorney-client privilege communications. The billing information in the state litigation is not related to any claim or defense and is protected by attorney-client privilege communication. The nature of the billing is attorney-client retainer contract. Without waiving any objections, at this time, Chevaldina does not have any non-privileged, responsive answer to this question. CIR knew that attorney-client privileged relationship exists between GSG and Chevaldina when submitted this request. Previously, CIR demonstrated its disrespect to attorney-client privileged relationship, publicly distributed such information on the world wide web and public records.

*Id.*

In Plaintiff's requests 8-10, Plaintiff sought the following items:

8. All documents concerning the allegation in paragraph 17 of your First Amended Counterclaim that CIR, through its agent Nina Stillman-Mandel, distributed Chevaldina's protected personal information on www.linkedin.com.
9. All documents concerning the allegation in paragraph 20 of your First Amended Counterclaim that CIR "disclosed, published, and distributed Chevaldina's protected personal information" to www.plainsite.org.
10. All documents concerning the allegation in paragraph 20 of your First Amended Counterclaim that CIR "disclosed, published, and distributed Chevaldina's protected personal information" to www.courtlistener.com.

*Id.*

Chevaldina again presented an identical response to requests 8-10:

Defendant objects to this interrogatory as unduly and unnecessarily burdensome to the extent that it seeks information is matter of public record, already in Plaintiff's possession, or otherwise readily available to Plaintiff, and therefore, may be accessed and obtained by Plaintiffs with less burden than Defendant can identify and provide requested information. Defendant objects to this interrogatory to the extent that it is overbroad, unduly burdensome, vague, ambiguous, confusing, require speculation to determine their meaning or use imprecise specifications of the information sought. Defendant objects to this interrogatory to the extent that it seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving any objections, Chevaldina will produce relevant information to CIR, which CIR already has in its possession.

*Id.*

Plaintiff argues that Chevaldina produced documents in response to request 4, but that all the items were non-responsive. As for the remaining requests, Plaintiff claims that Chevaldina failed to produce anything because she believes her initial responses were adequate. As such, Plaintiff concludes that Chevaldina must

be compelled to provide better responses and compensate Plaintiff for its expenses incurred in filing its motion.

As an initial matter, Chevaldina's discovery objections are boilerplate in nature because they fail to be "sufficiently plain and specific to allow the Court to understand precisely how the challenged discovery requests are alleged to be objectionable." *Badger v. S. Farm Bureau Life Ins. Co.*, 2008 WL 906561, at *1 (M.D. Fla. Apr. 2, 2008) (quoting *Williams v. Taser Int'l, Inc.*, 2007 WL 1630875, at *3 (N.D. Ga. June 4, 2007)). By merely asserting, for example, that Plaintiff's requests are overbroad or unduly burdensome, Chevaldina fails to provide the Court with specific details on how her argument applies to each request. *See Miccosukee Tribe of Indians of Florida*, 2013 WL 10740706, at *2 (S.D. Fla. June 28, 2013) ("Specificity is required in objections because without it both the requesting party and the Court lacks sufficient information to understand the scope of the objection, and to fairly consider whether the objection has merit."); *U.S.C.F.T.C. v. Am. Derivatives Corp.*, 2007 WL 1020838, at *3 (N.D. Ga. Mar. 30, 2007) ("Merely stating that a discovery request is vague or ambiguous, without specifically stating how it is so, is not a legitimate objection to discovery."). Because Chevaldina's objections are boilerplate, they are essentially meaningless and provide no basis to deny Plaintiff's motion.

In putting aside that problem, Plaintiff's motion is well taken on the merits. Requests 1 and 2 relate to allegations that Chevaldina obtained an unreasonably low amount in attorneys' fees from Katz in exchange for Katz dropping a claim

against Chevaldina in state court. While Chevaldina believes that Plaintiff's requests rely on speculation and hearsay, Plaintiff's theory of how and why Chevaldina breached the retainer agreement is reasonable given the facts presented. Put another way, Plaintiff's theory of the case – that Chevaldina used her attorneys' fees motion against Katz in the Eleventh Circuit to settle Katz's motion against her in state court – relates to the breach of contract claims because a failure to pay Plaintiff was purportedly tied to Katz as a bargaining chip. Therefore, Plaintiff's motion to compel a better response to requests 1-2 is **GRANTED**.

In refusing to provide a better response to requests 4-5, Chevaldina argues that the Court dismissed her first amended complaint and that the documents are now irrelevant to the claims presented. At the time Chevaldina filed her response, she was mistaken because there had only been a *recommendation* that her claims be dismissed without prejudice. Nothing in the first amended complaint was dismissed until the District Judge affirmed the undersigned's Report and Recommendation on May 24, 2018. [D.E. 196]. And even though the District Judge dismissed Chevaldina's claims, he did so without prejudice meaning that Chevaldina was given leave to amend to correct any previously identified defects. Requests 4 and 5 are therefore relevant because Chevaldina alleges that she was forced to pay another attorney when Plaintiff breached the retainer agreement. Because the documents sought are relevant and the allegations may be renewed in

an amended pleading, Plaintiff's motion to compel better responses to requests 4 and 5 is **GRANTED**.

In response to requests 8-10, Chevaldina claims that these are duplicative of request 7 and that she has already provided the links to the website pages where the requested information is available. But, Chevaldina's response to requests 8-10 never mentioned request 7. Instead, her response consisted of boilerplate objections. It appears that Chevaldina may be referring to interrogatory 7, but it is uncertain because due to a lack of clarity in Chevaldina's arguments. In any event, requests 8-10 seeks documents – not websites – with respect to the allegations presented in paragraph 20 of Chevaldina's first amended counterclaim. And Plaintiff states that it cannot find any personal information about Chevaldina that may have come from a motor vehicle record in relation to the websites in requests 8-10. Therefore, Chevaldina is compelled to provide better responses to requests 1-2, 4-5, and 8-10. To this extent, Plaintiff's motion is **GRANTED**. As for Plaintiff's request for the payment of fees and expenses, that motion is **DENIED**.

### E. *Plaintiff's Motion to Compel Better Responses [D.E. 159]*

On April 20, 2018, Plaintiff filed a motion to compel Chevaldina to provide better responses to CIR's third set of interrogatories and requests for production and to require Chevaldina to pay CIR's reasonable expenses. [D.E. 159]. There are two interrogatories in dispute in Plaintiff's discovery requests. The first interrogatory requests that Chevaldina:

Identify any medical or osteopathic doctor, psychologist, mental health social worker, mental health counselor or therapist, family therapists, optician, optometrist, chiropractor, or practitioner of Traditional Chinese Medicine that you have seen for treatment between January 1, 2015 and today.

[D.E. 159]. As for the second interrogatory, it requests that Chevaldina:

Identify the 'social websites' that you detected had your personal information as a consequence of CIR's alleged DPPA violation and describe your efforts to 'clean' those websites, including any communications you had with the operators of those 'social websites.' Identify those operators with whom you had such communications and any documents concerning your efforts to 'clean' the websites in question.

*Id*.    There are also five requests for production that are in dispute.

Specifically, Plaintiff requests the following information:

1. All medical records created, or concerning an examination that took place, between January 1, 2015 and today.
2. All other documents concerning the emotional distress and other mental and physical injuries that you allege you have incurred as a consequence of CIR's DPPA violation.
3. All communications with GSG concerning its negotiations with the State Court Plaintiffs to resolve their motion for attorneys fees and costs in the State Court Litigation (filed December 1, 2015) or your motion for attorneys fees and costs in the Federal Appeal.
4. All documents concerning any legal expenses that you incurred in this lawsuit for which you are claiming damages under the DPPA.
5. All documents concerning your efforts to detect and clean "social websites" that you allege had your personal information as a consequence of CIR's DPPA violation.

*Id*.

In requests 1, and 2, Plaintiff seeks information on Chevaldina's alleged injuries that Plaintiff caused it when it violated the DPPA. But, Plaintiff's motion with respect to these requests is unpersuasive because Chevaldina has already stated that she does not have any non-privileged responsive documents left to

produce and we accept this averment at face value. *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 12 (D.D.C. 2007) (declining to compel production where party objected "on the basis that it believes no [responsive] document to exist [and] . . . [i]f a document is not in the possession, custody or control of a party, then it clearly cannot be turned over."); *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 152 (S.D.N.Y. 1997) ("Under ordinary circumstances, a . . . good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production . . . .") (citation omitted); 4 Wright & Miller, *Federal Practice & Procedure: Civ. 2d* § 2213 (2d ed. 1994) (noting that nothing more is required in responding to discovery request than response "saying that a particular document is not in existence or that it is not in the responding party's possession, custody, or control"). Therefore, Plaintiff's motion, to compel a better response to requests 1 and 2 is **DENIED**.

Plaintiff's motion to compel a better response to request 3 is also unpersuasive because – as we stated earlier – Chevaldina has merely denied Plaintiff's allegations on what her privileged communications with GSG might reveal. And because Chevaldina has merely denied Plaintiff's allegations as opposed to the pursuit of an affirmative claim, Chevaldina has not waived the attorney-client privilege or the work product doctrine. Therefore Plaintiff's motion to compel a better response to request 3 is **DENIED**.

In request 4, Plaintiff seeks "[a]ll documents concerning any legal expenses that [Chevaldina] incurred in this lawsuit for which [Chevaldina is] claiming damages under the DPPA." [D.E. 159]. Aside from her boilerplate objections, Chevaldina suggests that request 4 is unclear and that she cannot produce documents "concerning legal expenses" because Plaintiff failed to define these terms. Chevaldina's objection lacks merit because it is abundantly clear that the items Plaintiff seeks relate to Chevaldina's allegation that she incurred (1) 1000 hours of time in legal research[11], and (2) costs associated with the preparation of legal papers when CIR violated the DPPA. In any event, the relief requested is **DENIED as moot** following the Order striking Chevaldina's claim for damages. *See infra* pp. 22-26.

With respect to request 5, Plaintiff seeks all documents concerning Chevaldina's efforts to detect and clean social websites where Plaintiff posted her private information. Request 5 is relevant to the allegations presented, but Chevaldina explained in her response that she no documents to support her allegations in cleaning social websites. Because there is nothing for Chevaldina to produce in response to this request, we have no choice but to conclude that Plaintiff's motion to compel is **DENIED**.

In interrogatory 1, Plaintiff seeks to compel Chevaldina to identify any medical professionals that she has seen for treatment since January 1, 2015. Chevaldina responded with boilerplate objections and stated that Plaintiff failed to

---

[11]     For example, Chevaldina suggested that she seeks an hourly compensation for her work at the rate of CIR's senior paralegal. [D.E. 154-2].

explain how her visits to doctors are related to the facts of this case. Chevaldina's objections are misplaced because she has repeatedly claimed a significant number of medical ailments when Plaintiff violated the DPPA – including migraines, heart palpitations, and blurry vision. Hence, the relevancy of interrogatory 1 is obvious because Chevaldina has directly inserted her medical condition into her DPPA claim. But, the relief requested is **DENIED as moot** following the Order striking Chevaldina's claim for damages. *See infra* pp. 22-26.

Finally, Plaintiff seeks to compel a better response to interrogatory 2 because the items sought relate to Chevaldina's claim that she has suffered a social injury as a result of Plaintiff's violations of the DPPA. Chevaldina objects to this request because the interrogatory is allegedly vague and irrelevant to the facts of this case. But, after a review of the interrogatory, there is nothing inherently vague about the information Plaintiff seeks especially since the request is modelled after Chevaldina's own allegations in her counterclaim. Nonetheless, Plaintiff's motion is **DENIED as moot** following the Order striking Chevaldina's claim for damages. *See infra* pp. 22-26.

In sum, Plaintiff's motion to compel is **DENIED** in its entirety, including Plaintiff's request for Chevaldina to pay Plaintiff's reasonable fees and expenses.

### F.  *Plaintiff's Motion for § 1927 Sanctions [D.E. 164]*

On April 30, 2018, Plaintiff filed a motion for sanctions under 28 U.S.C. § 1927 for Chevaldina's submission of a meritless and vexatious motion to compel. [D.E. 164]. Plaintiff argues that Chevaldina filed a motion to compel for the sole

purpose of requiring Plaintiff to expend time and energy to oppose the motion. After Plaintiff submitted its opposition, Chevaldina withdrew the motion, asserting that "Plaintiff has finally provided its signed statement/stipulation that it (1) does not have any accounting records supporting its claim for damages other than those produced in response to a prior document request and (2) does not have any accounting records that reflects the amount that CIR claims in this lawsuit for breach of contract." [D.E. 147]. Plaintiff denies that there was any stipulation that could explain a proper reason for Chevaldina's withdrawal. And even if Chevaldina's alleged reason was true, Plaintiff suggests that Chevaldina did not receive any of the relief that her motion sought, which was a stipulation under oath. Plaintiff therefore concludes that Chevaldina's goal was not to obtain discovery but to harass Plaintiff and force it to do unnecessary work in this case. Accordingly, Plaintiff seeks sanctions under § 1927.

A district court's authority to issue sanctions under § 1927 is either broader than or equally as broad as a court's authority to issue sanctions under its inherent powers. *See Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1178 n. 6 (11th Cir. 2005). Specifically, Section 1927 provides that unreasonable or vexatious conduct may be sanctionable in certain circumstances:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. There are three essential requirements for an award of sanctions under § 1927:

> First, the attorney must engage in unreasonable and vexatious conduct. Second, that unreasonable and vexatious conduct must be conduct that multiplies the proceedings. Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir. 1997).

To date, the Eleventh Circuit has not addressed the question of whether sanctions under § 1927 may be assessed against a *pro se* litigant.[12] *See Meidinger v. Healthcare Industry Oligopoly*, 391 Fed. App'x 777, 780 (11th Cir. Aug. 9, 2010); *but see Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (in discussing Rule 11 and § 1927, stating that "[a] court may assess attorney's fees against litigants, counsel, and law firms who willfully abuse judicial process by conduct tantamount to bad faith.") (citing *Roadway Express Inc. v. Piper*, 447 U.S. 752 (1980)); *Spolter v. Suntrust Bank*, 403 F. App'x 387, 389, 390 (11th Cir. Nov. 16, 2007) (affirming sanctions against *pro se* lawyer litigant under Federal Rule of Civil Procedure 11, § 1927, and the court's inherent powers).

---

[12]   *See also Inst. For Motivational Living, Inc. v. Doulos Inst. For Strategic Consulting, Inc.*, 110 F. App'x 283, 286-87 (3d Cir. Oct. 5, 2004) (noting that while the circuits are split on whether a court may sanction a *pro se* party under 28 U.S.C. § 1927, the "vexatious litigation" statute, the court may award identical sanctions under its inherent authority); *Smartt v. First Union Nat'l Bank*, 245 F. Supp. 2d 1229, 1235 (M.D. Fla. 2003) (holding that § 1927 sanctions may be levied against *pro se* litigants); *Godwin v. Marsh*, 266 F. Supp. 2d 1355, 1359 (M.D. Ala. 2002) (holding that § 1927 sanctions may not be levied against *pro se* litigants).

But, we are skeptical that sanctions under § 1927 can be imposed to *pro se* litigants because the statute – by its plain language – only applies to "[a]ny attorney or other person admitted to conduct cases in any court of the United States." 18 U.S.C. § 1927. Plaintiff insists that Chevaldina fits into the criteria of "other person admitted to conduct cases," but the Eleventh Circuit has only applied § 1927 against litigants, counsel, and law firms who abuse the judicial process. *See Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991).

"The starting point for all statutory interpretation is the language of the statute itself." *United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir. 1999). And we should "assume that Congress used the words in a statute as they are commonly and ordinarily understood." *Id.* In applying these principles, we should "only look beyond the plain language of a statute at extrinsic materials to determine the congressional intent if: (1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent." *Id.* None of these exceptions apply because the statute is clear that either an attorney or a person who is *admitted* to conduct cases may be sanctioned under § 1927. Because Chevaldina fits neither category, we conclude that § 1927 does not apply to *pro se* litigants.

Yet, even if we assume that § 1927 applies to Chevaldina, we would still decline to impose sanctions because they are only appropriate for litigants that intentionally and unnecessarily cause delays during litigation. *See Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). In reviewing the underlying motion in

question and Chevaldina's reason for her withdrawal, we find that there is no basis to impose sanctions under § 1927. Plaintiff argues that Chevaldina's withdrawal without obtaining the relief sought can only lead to the conclusion that she filed her motion for an improper purpose and to require Plaintiff to engage in unnecessary motion practice. But, we decline to make that assumption based solely on the withdrawal of Chevaldina's motion. Therefore, Plaintiff's motion for sanctions under § 1927 is **DENIED**.[13]

### G. *Plaintiff's Motion for Rule 11 Sanctions [D.E. 166]*

On May 1, 2018, Plaintiff filed a motion for Rule 11 sanctions against Chevaldina. [D.E. 166]. Plaintiff argues that on March 27, 2018, Chevaldina filed a frivolous motion to dismiss on the basis that the amount in controversy had not been sufficiently pled and that this Court lacks subject matter jurisdiction. Plaintiff suggests that Chevaldina's motion violates Rule 11 because it is patently frivolous and that all of her motions have been either denied or voluntarily withdrawn. Therefore, Plaintiff requests that sanctions be imposed to deter Chevaldina from filing frivolous motions.

"Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment." *Davis v. Carl*, 9106 F.2d 533, 538 (11th Cir. 1990)

---

[13]     Plaintiff's motion is based on the allegation that Chevaldina has improperly increased Plaintiff's costs and the frequency of motion practice in this case. But, both parties have filed an abundance of motions – which raise issues that could have been resolved without motion practice. To conclude that Chevaldina is solely at fault for the increased costs of this case would require one to ignore the countless motions that Plaintiff has filed.

(emphasis in original). Rule 11 sanctions are proper "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (quoting *Jones v. International Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)). Federal Rules of Civil Procedure 11(b)(1) and 11(b)(3) provide the standard in determining when a pleading may be sanctionable:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. Pro. 11(b)(1), 11(b)(3).

Additionally, Federal Rule of Civil Procedure 11(c)(1) states the following:

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

Fed. R. Civ. Pro. 11(c)(1).

"In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous—in view of the facts

or law—and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would've been aware had he made a reasonable inquiry. If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound. The reasonableness of the inquiry 'may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the [violative document]; . . . or whether he depended on forwarding counsel or another member of the bar." *Worldwide Primates, Inc.*, 87 F.3d at 695 (quoting *Mike Ousley Productions, Inc. v. WJBF-TV*, 952 F.2d 380, 382 (11th Cir. 1992)); *see also Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001). "Although sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts,' they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law." *Baker v. Adelman*, 158 F.3d 516, 524 (11th Cir. 1998) (citations omitted).

Here, Plaintiff's motion is unpersuasive because, despite Chevaldina filing motions that misapply the law, we cannot find that they were objectively frivolous. Plaintiff is correct that most of Chevaldina's motions have been denied in this case. But, a misapplication of the facts and the law does not warrant Rule 11 sanctions. If that was the governing principle, Rule 11 would be applied whenever an unpersuasive motion is presented to the Court. That is not how we apply Rule 11 because even if an argument is substantively unpersuasive that does not mean it is

41

frivolous. Indeed, the policy underlying Rule 11 is to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Pin v. Texaco, Inc.*, 793 F.2d 1448, 1455 (5th Cir. 1986) (quoting Advisory Committee Note)). Therefore, we conclude – after a thorough review of the motion presented and the underlying record – that Rule 11 sanctions are inappropriate given the facts of this case and that Plaintiff's motion must be **DENIED**.

### H.     *Plaintiff's Motion to Stay Discovery [D.E. 172]*

On May 11, 2018, Chevaldina filed a motion to stay discovery and other deadlines because her motion to dismiss for lack of subject matter jurisdiction is case dispositive. [D.E. 172]. Chevaldina argues that her objections to the District Judge should be ruled upon prior to any additional discovery because this case may soon be dismissed and a stay would promote judicial economy. Therefore, Chevaldina concludes that her motion must to stay be granted because the record establishes that Plaintiff has not alleged in good faith an amount in controversy over $75,000 and that the Court lacks jurisdiction over this action.

The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002) ("At the outset, we stress the broad discretion district courts have in managing their

cases."); *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling."). Additionally, "[m]atters pertaining to discovery are committed to the sound discretion of the district court." *Patterson v. United States Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990).

To prevail on a motion to stay discovery, Chevaldina must demonstrate reasonableness and good cause. "While overall stays of discovery may be rarely granted, courts have held good cause to stay discovery exists wherein 'resolution of a preliminary motion may dispose of the *entire action.*'" *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla.), *aff'd*, 87 F. App'x 713 (11th Cir. 2003) (emphasis added) (quoting *Association Fe Y Allegria v. Republic of Ecuador,* 1999 WL 147716 (S.D.N.Y. Mar. 16, 1999)); *see also Patterson,* 901 F.2d at 927 (holding district court did not abuse its discretion by staying discovery where pending dispositive motions gave court enough information to ascertain further discovery not likely to produce a genuine issue of material fact); *Feldman v. Flood,* 176 F.R.D. 651 (M.D. Fla. 1997) (holding stay of discovery not appropriate unless pending dispositive motion would dispose of entire action); *Spencer Trask Software and Information Services, LLC v. Rpost International Limited,* 206 F.R.D. 367 (S.D.N.Y. 2002) (holding good cause for discovery stay exists where dispositive motion has been filed and stay is for short time period that does not prejudice opposing party); *Simpson v. Specialty Retail Concepts, Inc.,* 121 F.R.D. 261 (M.D.N.C. 1988) (setting up balancing test for stays of discovery).

In the absence of a dispositive motion, courts have also granted motions to stay in consideration of the following four factors: "(1) whether the litigation is at an early stage; (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court." *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (citing *Tap Pharmaceautical Products, Inc. v. Atrix Laboratories, Inc.*, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004); *Baxter International, Inc. v. Fresenius Medical Care Holdings, Inc.*, 2008 WL 4395854, at *3 (N.D. Ill. Sept. 25, 2008)). One additional circumstance that has sometimes satisfied the aforementioned factors is the possibility of avoiding unnecessary expenses while the parties engage in mediation or settlement discussions that might conserve the parties' resources and promote judicial economy. *See, e.g., ArrivalStar, S.A. v. Blue Sky Network, LLC*, 2012 WL 588806, at *2 (N.D. Cal. Feb. 22, 2012) ("The Court concludes that Blue Sky has shown good cause to justify a stay of discovery pending mediation. The Court finds that staying discovery pending mediation will conserve the resources of the parties and will not impose an inequity on any party."); *see also Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008) ("[D]istrict courts have inherent, discretionary authority to issue stays in many circumstances and granting a stay to permit mediation (or to require it) will often be appropriate.").

"In evaluating whether the moving party has met its burden, a court 'must balance the harm produced by a delay in discovery against the possibility that the [dispositive] motion will be granted and entirely eliminate the need for such discovery.'" *Bocciolone v. Solowsky*, 2008 WL 2906719, at *2 (S.D. Fla. July 24, 2008) (emphasis added) (quoting *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006)).  This means that courts generally take a "preliminary peek at the merits of [the] dispositive motion to see if it appears to be clearly meritorious and truly case dispositive." *Feldman*, 176 F.R.D. at 652-53.

Here, Chevladina's motion to stay lacks merit because her underlying motion to dismiss for lack of subject matter jurisdiction is unpersuasive for the same reasons espoused in the Court's Report and Recommendation.    [D.E. 158].[14] Chevaldina takes issue with Plaintiff's initial disclosures and reiterates that there is no good faith basis for Plaintiff to allege that the amount in controversy exceeds $75,000.  But, Chevaldina's arguments are misplaced because there is abundance of evidence to suggest that Plaintiff's breach of contract claim exceeds $100,000.  Because Chevaldina's motion to dismiss lacks merit, her motion to stay discovery is equally unpersuasive and must therefore be **DENIED**.

I.    ***Chevaldina's Motion to Compel a Deposition [D.E. 178], Plaintiff's Motion for Protective Order [D.E. 182], and Chevaldina's Motion for an Expedited Ruling [D.E. 183]***

On May 14, 2018, Chevaldina filed a motion to compel Plaintiff's agent – Ms. Mandel – to appear for a deposition on May 18, 2018 at 2 p.m. in Ft. Lauderdale,

---

[14]    The District Judge adopted the undersigned's Report and Recommendation on May 24, 2018.  [D.E. 196].

Florida. Chevaldina served Plaintiff with the notice of deposition on April 23, 2018, which states that "[t]he person(s) who shall be deposed is CIR's Accountant/Financial Analyst, or any person in charge of CIR's accounting . . . ." [D.E. 178 at 9]. Chevaldina alleges that her DPPA claim is premised on Ms. Mandel knowingly and willfully distributing Chevaldina's protected personal information on linkedin.com. And at the time Ms. Mandel distributed this information, Chevaldina argues that Ms. Mandel was Plaintiff's counsel of record. Because Ms. Mandel is in possession of information necessary to support Chevaldina's counter-claim, Chevaldina concludes that Ms. Mandel must be compelled to appear for a deposition.

Prior to the deposition – that was scheduled for May 18, 2018 – Plaintiff filed a motion on May 17, 2018 for a protective order and to require Chevaldina to pay its reasonable expenses. [D.E. 182]. As background, Plaintiff explains Ms. Mandel is a partner with Mandel & Mandel, a law firm representing Plaintiff in this case. Plaintiff contends that she is not Plaintiff's accountant or financial analyst, and has no responsibility whatsoever for Plaintiff's accounting practices. Plaintiff further argues that Ms. Mandel is not an employee of Plaintiff and does not have any substantial responsibility for its ongoing activities.

On April 26, 2018, Plaintiff emailed Chevaldina to explain that her notice was defective because Ms. Mandel was not a managing agent, officer, or director of CIR. In an attempt to avoid any additional motion practice, Plaintiff offered a compromise in that Ms. Mandel would appear voluntarily for a deposition if

Chevaldina agreed to hold it somewhere in downtown Miami. Chevaldina did not respond to CIR's email and did not serve a subpoena on Ms. Mandel to require her appearance in Ft. Lauderdale. Nearly two weeks later, Plaintiff emailed Chevaldina again to point out that she failed to respond to Plaintiff's offer. Chevaldina appears to have rejected that compromise and on May 14, 2018, she moved for an order to compel the deposition.

Only a party to the litigation may be compelled to give deposition testimony pursuant to a notice of deposition. If the party is a corporation, it may be noticed pursuant to Federal Rule of Procedure 30(b)(6), in which case the corporation must designate an individual to testify as the corporate representative. Alternatively, the party seeking a corporate deposition may identify a specific officer, director, or managing agent to be deposed and notice that individual under Federal Rule of Civil Procedure 30(b)(1). A corporate employee who does not qualify as an officer, director, or managing agent is not subject to deposition by notice. Rather, the employee is treated as any other non-party – meaning before being compelled to testify, he or she must be served with a subpoena pursuant to Federal Rule of Civil Procedure 45. *See Schindler Elevator Corp. v. Otis Elevator Co.,* 2007 WL 1771509, at *2 (S.D.N.Y June 18, 2007); *EEOC v. Honda of America Mfg., Inc.,* 2007 WL 682088, at *2 (S.D. Ohio Feb. 28, 2007); *McMahon v. Presidential Airways, Inc.,* 2006 WL 5359797, at *1 (M.D. Fla. Jan.18, 2006); *Cleveland v. Palmby,* 75 F.R.D. 654, 656 (W.D. Okla. 1977); 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure:* Civil 2d § 2107 (2d ed. 1994).

Here, Chevaldina's motion to compel lacks merit because she has failed to meet her burden of establishing that Ms. Mandel is an officer, director, or managing agent of CIR. And it is well settled that the party seeking to take the deposition bears the burden of establishing the capacity of the person sought to be examined. *See Schindler,* 2007 WL 1771509, at *3; *Honda of America,* 2007 WL 682088, at *2; *Boss Mfg. Co v. Hugo Boss AG,* 1999 WL 20828, at *4 (S.D.N.Y. Jan. 13, 1999); *Palmby,* 75 F.R.D. at 656. Therefore, to the extent that Chevaldina believes that Ms. Mandel is a non-party, Chevaldina should have served her with a subpoena under Rule 45. Because Chevaldina failed (1) to meet her burden of establishing Ms. Mandel is a party to the litigation that may be subject to a notice of deposition, or (2) serve a subpoena to compel a deposition of a non-party, her motion to compel must be **DENIED**.[15] As for Plaintiff's motion for protective order, Plaintiff has set forth good cause for the same reasons set forth above. Therefore, Plaintiff's motion for protective order is **GRANTED**.[16]

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that:

A. Plaintiff's motion to compel the production of 56 documents on GSG's privilege log is **DENIED**. [D.E. 142].

B. Plaintiff's motion to compel the re-designation of confidential documents

---

[15] Chevaldina's motion for expedited consideration is **DENIED as moot**. [D.E. 183].

[16] As for Plaintiff's motion for fees and costs in opposing Chevaldina's motion to compel Ms. Mandel's deposition, that request is **DENIED**.

is **DENIED**.  [D.E. 142].

C.  Chevaldina's motion for protective order is **GRANTED** and Plaintiff's motion for sanctions is **DENIED**.  [D.E. 152].

D.  Plaintiff's motion to preclude evidence is **GRANTED in part** and **DENIED in part**.  [D.E. 154].  Chevaldina is precluded from introducing any evidence of damages that she incurred on any of her claims or using any witnesses not previously identified.  To this extent, Plaintiff's motion is **GRANTED**.  As for Plaintiff's motion for Chevaldina to pay Plaintiff's expenses and attorneys' fees, that motion is **DENIED**.

E.  Plaintiff's motion to compel better responses is **GRANTED in part** and **DENIED in part**.  [D.E. 155].  Chevaldina is compelled to provide better responses to requests 1-2, 4-5, and 8-10 within fourteen (14) days from the date of this Order.  As for Plaintiff's request for the payment of fees and expenses, Plaintiff's motion is **DENIED**.

F.  Plaintiff's motion to compel better responses and documents is **DENIED**, including Plaintiff's request for Chevaldina to pay its reasonable fees and expenses.  [D.E. 159].

G.  Plaintiff's motion for § 1927 sanctions is **DENIED**.  [D.E. 164].

H.  Plaintiff's motion for Rule 11 sanctions is **DENIED**.  [D.E. 166].

I.  Chevaldina's motion to stay discovery and other deadlines is **DENIED**. [D.E. 172].

J.  Chevaldina's motion to compel Ms. Mandel's deposition is **DENIED**.

[D.E. 178].

K. Plaintiff's motion for a protective order to preclude the deposition of Ms. Mandel is **GRANTED**. [D.E. 182]. Plaintiff's motion for the payment of fees and expenses is **DENIED**.

L. Chevaldina's motion to expedite a ruling on her motion to compel Ms. Mandel's deposition is **DENIED as moot**. [D.E. 183].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of May, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge