UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-20905-Civ-KING/TORRES

CENTER FOR INDIVIDUAL RIGHTS,

    Plaintiff,

v.

IRINA CHEVALDINA,

    Defendant.
_____/

## ORDER ON PLAINTIFF'S MOTION IN LIMINE

This matter is before the Court on the Center for Individual Rights' ("Plaintiff" or "CIR") motion in limine against Irina Chevaldina ("Defendant" or "Chevaldina") to exclude as evidence (1) an email sent on December 14, 2015 and any other settlement communications, and (2) Plaintiff's communications with its donors, tax returns, or audited financial statements. [D.E. 207]. Chevaldina responded on June 20, 2018 [D.E. 229] to which Plaintiff replied on June 27, 2018. [D.E. 237]. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, response, relevant authority, and for the reasons discussed below, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

### I.     *APPLICABLE LEGAL PRINCIPLES AND LAW*

The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or

interruption of, the trial." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). Under the Federal Rules of Evidence, evidence is considered relevant as long as it has the tendency to make a fact of consequence more or less probable. *See* Fed. R. Evid. 401(a)-(b). The Rules permit the exclusion of relevant evidence when the probative value is substantially outweighed by danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and/or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403 (emphasis added). Courts are cautioned to use Rule 403 sparingly, *see, e.g., United States v. King*, 713 F.2d 627, 631 (1983), in part because the federal rules favor admission of evidence and in part because relevant evidence is inherently prejudicial to a criminal defendant. *See id.* (citing to other sources).

The term "unfair prejudice" in and of itself speaks to the ability of a piece of relevant evidence to lure the fact finder into declaring a defendant's guilt on grounds other than specific proof of the offense charged. *Old Chief v. United States*, 519 U.S. 172, 180 (1997). It also signifies an undue tendency to suggest guilt on an improper basis, commonly an emotional one. *See id.* In the context of a Rule 403 balancing test, the more essential the piece of evidence is to a case, the higher its probative value; the higher a piece of evidence's probative value, the less likely it should be excluded on 403 grounds. *See King*, 713 F.2d at 631.

Rule 404(b) provides that – while evidence of a defendant's other crimes, wrongs, or acts is inadmissible to prove a defendant's actions conform with his

2

character – such evidence may be admitted for other purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Essentially, Rule 404(b) "protects against the introduction of extrinsic act evidence when that evidence is offered solely to prove character." *Huddleston v. United States*, 485 U.S. 681, 687 (1988). For evidence of other crimes or acts to be admissible under Rule 404(b), (1) the evidence must be relevant to an issue other than defendant's character, (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the extrinsic act(s) in question, and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice. *See, e.g., United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000). The evidence must also pass a 403 balancing test. *Id.* To meet the second prong of the three-part test above, the movant need only make a sufficient showing under which a jury could believe the act actually happened. *See generally Huddleston*, 485 U.S. 681.

Evidence falls outside the scope of Rule 404(b) when it is (1) an uncharged offense that arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense. *United States v. Baker*, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005) (quoting another source).

> Evidence not part of the crime charged but [that] pertain[s] to the chain of events explaining the context, motive[,] and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime . . . forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

3

*United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). Such evidence must also still satisfy the requirements of Rule 403. *See Baker*, 432 F.3d at 1189.

## II. ANALYSIS

### A. *Whether Chevaldina Should be Precluded from Introducing Any Evidence of Plaintiff's Fundraising Efforts, Donations, Tax Returns, or Audited Financial Statements*

In the discovery phase of this case, Chevaldina filed into the record Plaintiff's donation letters, tax returns, and financial statements as a way to argue that CIR received outside funding when it represented Chevaldina in the Eleventh Circuit. Plaintiff contends that these items should be excluded at trial because they were irrelevant months ago and the same is true today. Chevaldina opposes Plaintiff's motion because these items are purportedly relevant to the extent that they can show how much Plaintiff was compensated by outside sources when representing her in the Eleventh Circuit. In other words, Chevaldina argues that these items cannot be excluded because "contract interpretation is a matter of law and cannot be done at the discovery stage." [D.E. 229 at 11]. Because Plaintiff's fundraising efforts, donations, tax returns, and audited financial statements are relevant to the disposition of Plaintiff's breach of contract claim, Chevaldina concludes that these documents must be available for use at trial.

We have previously considered Chevaldina's motions to compel Plaintiff's donations, tax returns, and financial statements on at least two prior occasions and found that there is no support that the financing – via donations or otherwise – of a public interest law firm undermines a breach of contract claim. [D.E. 92, 136]. We

4

found that if Chevaldina's position was correct, it would allow any party to willingly breach a contract with a public interest law firm – without any consequences – as long as the law firm receives other sources of revenue during its representation of a client. We further determined that Chevaldina's position was without merit because it would lead to unforeseen consequences and allow other sources of financing to eviscerate breach of contract claims.

On that basis, we denied Chevaldina's prior motions to compel because the question of how Plaintiff was compensated as a public interest firm – even if Chevaldina establishes that Plaintiff received contributions specifically earmarked to cover the costs of her case (which Plaintiff argues does not exist) – would not change Chevaldina's contract with Plaintiff to pay a reasonable attorneys' fee at the conclusion of her prior case. When we considered the relevance of these documents, we also found that Chevaldina lacked any authority for the contention that charitable contributions to a public interest law firm and attorney fee awards are similar. Therefore, we concluded that Chevaldina's request for Plaintiff's financial documents were irrelevant to the facts of this case and denied her motions to compel.[1]

Plaintiff seeks to apply the same reasoning to its motion in limine because CIR's financial documents are irrelevant to the facts of this case. But, Plaintiff's motion is unpersuasive – at this stage of the case – because Chevaldina could, at

---

[1] Because we denied Chevaldina's prior motions to compel, we assume that Chevaldina obtained Plaintiff's financial records in a method that is available to the general public.

the very least, introduce these items for the limited purpose of impeachment. Plaintiff's motion can therefore be denied on this basis alone because a "decision regarding an advance ruling on the admissibility of impeachment evidence is addressed to the sound discretion of the trial court." *United States v. York*, 722 F.2d 715, 716 (11th Cir. 1984) (citing *United States v. Rivers,* 693 F.2d 52 (8th Cir. 1982); *United States v. Tercero,* 640 F.2d 190 (9th Cir. 1980)). And assuming that Chevaldina can authenticate[2] these documents, it is within the purview of the District Judge to determine whether these items are admissible or not. Accordingly, Plaintiff's motion to preclude Chevaldina from introducing CIR's financial records is **DENIED**.

### B. *Whether Chevaldina Should be Precluded from Introducing Any Evidence of Plaintiff's Settlement Discussions*

The next issue is whether an email regarding Plaintiff's settlement discussions should be allowed at trial. Plaintiff claims that Chevaldina has

---

[2] The Federal Rules of Evidence are clear that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Under that rule, "documents must be properly authenticated as a condition precedent to their admissibility." *United States v. Siddiqui,* 235 F.3d 1318, 1322 (11th Cir. 2000). "To authenticate a document, Rule 901 only requires a proponent to present sufficient evidence to make out a *prima facie* case that the proffered evidence is what it purports to be . . . [a]fter meeting the *prima facie* burden, the evidence may be admitted, and the ultimate question of authenticity is then decided by the jury." *United States v. Lebowitz,* 676 F.3d 1000, 1009 (11th Cir. 2012) (citations and internal quotation marks omitted); *see also* United States *v. Lanzon,* 639 F.3d 1293, 1301 (11th Cir. 2011) (similar). Where an objection is raised to the admissibility of evidence on authenticity grounds, the trial court's inquiry is whether the proponent of the evidence has shown authentication "by evidence sufficient to support a finding that the matter in question is what its proponent claims." *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000).

previously relied upon an email dated December 14, 2015 from CIR's General Counsel Michael Rosman ("Mr. Rosman") to Adam Schacter ("Mr. Schacter") – the latter of which is an attorney with the firm of Gelber, Schacter, and Greenberg, P.A. ("GSG") and Chevaldina's counsel in state court. Plaintiff claims that Mr. Schacter was attempting to negotiate a resolution of a separate motion for attorneys' fees in state court. Mr. Katz was seeking $114,000 in fees and expenses to collect on a judgment against Chevaldina. Mr. Schacter asked CIR's General Counsel (1) what Chevaldina was seeking as fees in the Eleventh Circuit, and (2) whether CIR would accept something less. After internal consultation – and as a favor to Chevaldina who was facing a potential six-figure fee liability against her in state court – CIR claims that it was willing to compromise. Mr. Rosman emailed Mr. Schacter and told him that CIR would accept $75,000 for its work as opposed to the full amount stated in the retainer agreement. That offer never materialized because Plaintiff alleges that Chevaldina resolved her fees motion in state court without acquiring the $75,000 that CIR agreed to receive in return for its work in the Eleventh Circuit.

Plaintiff argues that the December 14, 2015 email constitutes a settlement offer as to the amount that Chevaldina owes CIR under the retainer agreement and that Federal Rule of Evidence 408 precludes its admission, including any other settlement communications that Chevaldina intends to rely upon at trial. Chevaldina's response is that the December 14 email is not a settlement communication, but evidence "that CIR hired GSG to represents its interest in the

7

settlement negotiation in the appeal case." [D.E. 229]. Chevaldina also argues that CIR has not shown that there was a dispute with her about the fees owed under the retainer agreement. And because a settlement negotiation requires an actual dispute or a difference of opinion between the parties as to the validity of a claim, Chevaldina concludes that Plaintiff's motion in limine must be denied.

Federal Rule of Evidence 408 provides that evidence of "furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise [a] claim," is not admissible "on behalf of any party to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. The Rule also states that "conduct or a statement made during compromise negotiations about the claim," is inadmissible except for limited circumstances in criminal cases. By its plain language, Rule 408 precludes the admission of evidence concerning an offer to compromise "a claim" for the purpose of proving (or disproving) the fact or amount of "the claim." In other words, Rule 408 requires "as to which a settlement offer was made and the claim at issue in the litigation in which the offer is proffered as evidence must be the same claim in order for the Rule to apply and call for the evidence's exclusion." *McClandon v. Heathrow Land Co. P'ship*, 2010 WL 336345, at \*3 (M.D. Fla. Jan. 22, 2010) (citation and quotation marks omitted).

Here, the communication between Mr. Rosman and Mr. Schacter relates to settlement negotiations between two attorneys, the former of which represented

8

Chevaldina in federal court and the latter in state court. The email in question is CIR's offer to lower its fee award under the retainer agreement (where Chevaldina prevailed against Katz in federal court) to $75,000 in order to assist Chevaldina from a fee liability (where Katz prevailed against Chevaldina) in state court. Chevaldina argues that Plaintiff cannot show that there was an actual dispute or at least an apparent difference of opinion on the amount owed under the retainer agreement to justify its exclusion under Rule 408.

But, Chevaldina's contention misses the mark because the email from Mr. Rosman was a response to a request from Mr. Schacter about the amount of the fee award that CIR would accept. And even though the settlement negotiation occurred in relation to another case, it still constitutes the same claim[3] as the one in this case because it relates to the amount of fees that Plaintiff is entitled to under its retainer

---

[3] *Accord Uforma/Shelby Business Forms, Inc. v. National Labor Relations Board,* 111 F.3d 1284, 1293–94 (6th Cir. 1997) ("'Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim.'") (quoting 23 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5314 (1st ed. 1980)); *Broadcort Capital Corp. v. Summa Medical Corp.,* 972 F.2d 1183, 1194 (10th Cir. 1992) (Rule 408 does not apply when the settlement discussions "involved a different claim than the one at issue in the current trial"); *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1363 (10th Cir. 1987) ("Read literally, the rule does not appear to cover compromises and compromise offers that do not involve the dispute that is the subject of the suit, even if one of the parties to the suit was also a party to the compromise."); *see also Zurich American Insurance Co. v. Watts Industries, Inc.,* 417 F.3d 682, 689 (7th Cir. 2005) ("The balance is especially likely to tip in favor of admitting evidence when the settlement communications at issue arise out of a dispute distinct from the one for which the evidence is being offered."); *Fiberglass Insulators, Inc. v. Dupuy,* 856 F.2d 652, 655 (4th Cir. 1988) (appearing to recognize that "offering an item of evidence is not in terms barred by Rule 408" if it is not offered "to show the validity or invalidity of the compromised claim").

9

agreement with Chevaldina. There is no question that there is a dispute on the amount of fees owed under the retainer agreement because Plaintiff claims that it is entitled to the full amount allowed under the contract whereas Chevaldina concludes that the amount is zero.

It also appears that Chevaldina believes that the December email cannot be precluded under Rule 408 because there was never mutual intent to negotiate a compromise. But, Rule 408 provides that offers to settle are excluded even if no additional negotiations follow. *See United States v. Davis*, 596 F.3d 852, 859 (D.C. Cir. 2010) ("If one party attempts to initiate negotiations with a settlement offer, the offer is excluded from evidence even if the counterparty responds: 'I'm not negotiating with you.'"); *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1107 (5th Cir. 1981) ("[Rule 408] does not indicate that there must be a pre-trial understanding or agreement between the parties" as to whether the evidence was furnished for the purpose of compromise); *Polk v. BP Amoco Chem. Co.,* 586 F. Supp. 2d 619, 621–22 (D.S.C. 2008) (concluding that a letter from the defendant outlining the defendant's position was covered by Rule 408, even though the plaintiff never made any settlement offer of his own and never expressed any willingness to settle for less than the full amount of his claim). And even assuming that intent has to be mutual in order for Rule 408 to apply, the email in question suggests that CIR and Mr. Schacter (as Chevaldina's state court counsel) were open to the possibility of settling Chevaldina's fee award in the Eleventh Circuit as well as her fee liability in

state court. Therefore, Plaintiff's motion to preclude the December 14, 2015 email is **GRANTED** under Rule 408.

As for Plaintiff's request to preclude all remaining settlement communications, Plaintiff fails to present this argument with any specificity. Plaintiff merely claims that Chevaldina has referred in her motions to other settlement conversations with CIR during the course of this litigation and that she should be precluded from introducing these items at trial. Plaintiff is correct that Rule 408 prohibits introduction of "[e]vidence of [settlement offers] to prove or disprove the validity or amount of a disputed claim," but appears to overlook the exception that allows such evidence "for another purpose." Fed. R. Evid. 408. Without any clarity on what other communications Plaintiff seeks to preclude, it would be premature to conclude that all settlement communications are *per se* barred under Rule 408 without any specifics on what these communications may be. Rule 408 does not come into play unless there is a dispute as to the validity or amount of a claim. And if a communication meets that requirement, it may still be admitted for "proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id*. Therefore, Plaintiff's motion to preclude all other settlement communications that Chevaldina raised in this case is **DENIED** with leave to renew with the District Judge at trial.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion in limine [D.E. 207] is **GRANTED in part** and **DENIED in part**:

1. Plaintiff's motion to preclude Chevaldina from introducing CIR's financial records at trial is **DENIED**.

2. Plaintiff's motion to preclude Chevaldina from introducing the December 14, 2015 email at trial is **GRANTED**.

3. Plaintiff's motion to preclude all other settlement communications is **DENIED** with leave to renew with the District Judge at trial.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of August, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge